C-393

# TERMINATION AGREEMENT

## BY AND AMONG

## FEDERAL DEPOSIT INSURANCE CORPORATION, AS MANAGER OF THE FSLIC RESOLUTION FUND,

## MICHIGAN NATIONAL CORPORATION

## AND

## INDEPENDENCE ONE BANK OF CALIFORNIA, FSB

## DATED AS OF SEPTEMBER 29, 1994

PENGAD 800-631-6989
PLAINTIFF'S EXHIBIT
4

# TERMINATION AGREEMENT

This TERMINATION AGREEMENT (which together with all Exhibits attached hereto is collectively called the "Agreement"), dated as of September 29, 1994, is entered into by and among the Federal Deposit Insurance Corporation (the "FDIC") as Manager of the FSLIC Resolution Fund (the "FRF") (the FDIC as Manager of the FRF is herein called the "FDIC Manager"), Michigan National Corporation, a savings and loan holding company incorporated under the laws of the State of Michigan ("MNC"), and Independence One Bank of California, FSB (formerly named Beverly Hills Federal Savings Bank), a federally-chartered stock savings bank wholly owned by MNC ("Independence One").

## RECITALS

The FRF is the transferee of the assets and liabilities of the Federal Savings and Loan Insurance Corporation (the "FSLIC"). The FDIC Manager, Independence One, and MNC desire to provide for (i) except as specifically set forth herein, the early termination of that certain Assistance Agreement dated December 31, 1988, by and among the FSLIC, Independence One, and MNC (the "Assistance Agreement"), (ii) the settlement of certain disputes under the Assistance Agreement, and (iii) the prepayment of the Replacement Promissory Note dated July 1, 1990, made by the FDIC Manager (the "Note") in the principal amount of $811,465,568.00.

## AGREEMENT

In consideration of the mutual promises and covenants contained herein, and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and, notwithstanding anything to the contrary in the Assistance Agreement or any related agreement, the parties hereby agree as follows:

## ARTICLE 1
## EXECUTION

**Section 1.1** **Execution and Effect.** This Agreement is executed and effective as of this 29th day of September, 1994. Except for any and all payments of interest to Independence One, MNC or the FDIC Manager pursuant to Section 2.4(d), Section 4.2, or Section 11.14, and except for the payments contemplated by Section 3.2, all payments provided for under this Agreement to be made by the FDIC Manager to Independence One or MNC represent either a prepayment, or a payment in lieu of, a fixed or contingent right to assistance provided for in the Assistance Agreement, and all payments provided for in this Agreement to be made by Independence One or MNC to the FDIC Manager represent a payment of net tax benefits or a repayment of other assistance provided for in the Assistance Agreement.

**Section 1.2** **MNC Deliveries at Execution.** Simultaneously with the execution of this Agreement:

(a) **Certified Resolutions.** The FDIC Manager shall have received certificates from each of Independence One and MNC,

signed by their respective corporate secretaries, certifying that (i) its board of directors has duly adopted resolutions, copies of which shall be attached to such certificate, (A) approving the terms of this Agreement and authorizing the consummation of the transactions contemplated by this Agreement, and (B) authorizing an officer of it to execute and deliver this Agreement and all necessary ancillary documents; (ii) all of such resolutions are in full force and effect; and (iii) none of such resolutions has been amended or modified.

(b) **Incumbency Certificates**. The FDIC Manager shall have received certificates from each of Independence One and MNC, signed by their respective corporate secretaries or other officers, certifying as to each person executing this Agreement on behalf of Independence One and MNC, respectively, that (i) such person is an officer of Independence One or of MNC holding the office or offices specified therein; and (ii) the signature of each such person set forth on such certificate is his or her genuine signature.

(c) **Legal Opinions**. The FDIC Manager shall have received signed opinions from Independence One and MNC addressed to the FDIC Manager and substantially in the form of Exhibit 1.2(c) hereto, with such changes as the FDIC Manager and its legal counsel may approve.

**Section 1.3 FDIC Manager Deliveries at Execution.** Simultaneously with the execution of this Agreement:



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0004

(a) <u>Certified Resolutions</u>. MNC shall have received certificates from the FDIC Manager, signed by its corporate secretary, certifying that (i) its board of directors has duly adopted resolutions, copies of which shall be attached to such certificate, (<u>A</u>) approving the terms of this Agreement and authorizing the consummation of the transactions contemplated by this Agreement, and (<u>B</u>) authorizing an officer of it to execute and deliver this Agreement and all necessary ancillary documents; (ii) all of such resolutions are in full force and effect; and (iii) none of such resolutions has been amended or modified.

(b) <u>Incumbency Certificates</u>. MNC shall have received certificates from the FDIC Manager, signed by its corporate secretary, certifying as to the person executing this Agreement on behalf of the FDIC Manager that (i) such person is an officer of the FDIC Manager holding the office or offices specified therein; and (ii) the signature of such person set forth on such certificate is his genuine signature.

(c) <u>Legal Opinion</u>. MNC shall have received a signed opinion from the FDIC's Senior Counsel (Resolutions) addressed to Independence One and MNC and substantially in the form of Exhibit 1.3(c) hereto, with such changes as Independence One and MNC and their legal counsel may approve.

## ARTICLE 2
## TERMINATION AMOUNT; NOTE CANCELLATION; FINAL SRA PROCEDURES; SRLY AND REFUND PAYMENTS; TAX INDEMNIFICATIONS; AND RESERVE FOR BAD DEBTS

Section 2.1 Termination Amount.

(a) Payment of Termination Amount. On September 30, 1994, the FDIC Manager shall pay or cause to be paid to Independence One, by wire transfer in immediately available funds, $340,555,345.00 (the "Termination Amount"). The Termination Amount shall be transferred to Independence One pursuant to the following instructions:

ABA: 322270660
Telegraphic Name: INDPC ONE BK CA MV
Credit: The Federal Deposit Insurance Corporation,
Account Number 322270660

The Termination Payment has been determined by subtracting from the sum of the items described in (i) through (iv) below, the items described in (v) through (viii) below.

(i) As of September 30, 1994, the outstanding principal balance of the Note delivered to Independence One pursuant to the Assistance Agreement is $348,930,193.00. The Termination Amount effectuates a prepayment of this principal amount.

(ii) As of September 30, 1994, the interest due on the Note for the third quarter of 1994 is estimated to be $3,900,342.00. The Termination Amount effectuates a payment of this interest.

(iii) The amount of interest paid on the Note for the second quarter of 1994 was $49,199.00 less than the actual



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0006

interest due for such quarter. The Termination Amount effectuates a payment of this additional interest.

(iv) Independence One has projected that it will receive legal bills for services performed during and prior to the third quarter of 1994 for which it is entitled to be reimbursed pursuant to the Assistance Agreement in the amount of $27,478.00. The FDIC Manager is entitled under the Assistance Agreement to receive a payment for a share of the tax benefit attributable to the reimbursement of legal bills which would be $9,617.00. Independence One has agreed to accept a payment of $17,861.00 ($27,478.00 minus $9,617.00) in lieu of its right to reimbursement of the specific bills under the Assistance Agreement and its obligation to pay tax benefits on such items to the FDIC Manager. The Termination Amount effectuates a payment of this additional net amount for such legal bills.

(v) The FDIC Manager is entitled under the Assistance Agreement to receive a share of net tax benefits realized by Independence One in each taxable year. Because the tax benefits for taxable years 1993 and 1994 cannot be determined with certainty at this time, Independence One has agreed to pay the amount of $4,500,000.00 as an estimate of such amounts, which estimate is later adjusted to actual as provided in other provisions of this Agreement. The Termination Amount effectuates this prepayment of such net tax benefits.

(vi) The parties agree that the amount of Indemnification Net Tax Benefits paid to the FDIC Manager by Independence One pursuant to the Assistance Agreement for taxable year 1991 was understated by $747,528.00. The Termination Amount effectuates a payment of this additional amount due to the FDIC Manager under the Assistance Agreement.

(vii) The parties agree that the amount of Federal and State Net Tax Benefits paid to the FDIC Manager pursuant to the Assistance Agreement for taxable year 1991 was understated by $94,722.00. The Termination Amount effectuates a payment of this additional amount due to the FDIC Manager under the Assistance Agreement.

(viii) Independence One and the FDIC Manager had a number of disputes as to the rights and obligations of the parties under the Assistance Agreement and the Note which affected the amount of assistance and interest properly due to Independence One. In addition, if the Assistance Agreement were to continue, the FDIC Manager and Independence One would have certain obligations to pay the other party in the future. Because the parties desired to terminate the Assistance Agreement, and resolve all disputes thereunder, Independence One agreed to pay to the FDIC Manager the amount of $7,000,000.00. The Termination Amount effectuates a payment of this amount.



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0008

(b) Interest Adjustment.

(i) No later than November 7, 1994, the FDIC Manager shall provide to Independence One a calculation of the amount of interest payable by the FDIC Manager on the Note for the quarter ended September 30, 1994.

(ii) No later than November 10, 1994, the FDIC Manager shall pay or cause to be paid to Independence One, by wire transfer in immediately available funds, an amount equal to the excess, if any, of --

(A) the amount of interest payable by the FDIC Manager on the Note for the quarter ending September 30, 1994, over

(B) $3,900,342.00.

Such interest adjustment shall be transferred to Independence One pursuant to the following instructions:

ABA: 322270660
Telegraphic Name: INDPC ONE BK CA MV
Credit: The Federal Deposit Insurance Corporation, Account Number 322270660, Section 2.1(b) Interest

(iii) No later than November 10, 1994, Independence One and MNC shall pay or cause to be paid to the FDIC Manager, by wire transfer in immediately available funds, an amount equal to the excess, if any, of --

(A) $3,900,342.00, over

(B) the amount of interest payable by the FDIC Manager on the Note for the quarter ending September 30, 1994.



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0009

Such interest adjustment shall be transferred to the FDIC Manager pursuant to the following instructions:

ABA: 021030004
Telegraphic Name: TREAS NYC/CTR/
Credit: BNF=/AC-4976 OBI=FRF, FIN # 1790, C-393 interest

**Section 2.2** **<u>Note Cancellation</u>.** On September 30, 1994, upon receipt of confirmation of the wire transfer described in Section 2.1(a), Independence One shall deliver to the FDIC Manager the original Note marked "Cancelled: Paid in Full."

**Section 2.3** **<u>Resolved Items</u>.** Exhibit 2.3 attached hereto contains the definitive agreement among the parties hereto regarding resolution of the issues set forth therein (collectively, the "Resolved Items"); any and all payments due between them with respect to such issues have been encompassed in the Termination Amount.

**Section 2.4** **<u>Final SRA Procedures</u>.**

(a) **<u>Final Reports</u>.**

(i) No later than November 15, 1994, Independence One shall provide the FDIC Manager with a copy of its 1993 state corporate tax return and with the report for 1993 of Deloitte & Touche required by Section 15(e)(1) of the Assistance Agreement.

(ii) No later than December 30, 1994, Independence One will file with the Dallas office of the FDIC Manager the quarterly report for the Special Reserve Account established pursuant to Section 3 of the Assistance Agreement (the

"SRA") for the quarter ending September 30, 1994 (the "Final Report").

(iii) Except as otherwise specifically required by this Agreement, neither Independence One nor MNC shall have any obligation to file with the FDIC Manager any further reports, records, audits, returns or other statements with respect to any matters that are the subject of the Assistance Agreement.

(b) __1993 Tax Sharing__. With respect to taxable year 1993, Independence One shall make a debit to the SRA as of September 30, 1994, for the amount due to Independence One under Section 3(a)(16) of the Assistance Agreement and shall make a credit to the SRA as of September 30, 1994, for the amount due to the FDIC Manager under Section 3(b)(5) of the Assistance Agreement.

(c) __1994 Tax Sharing__. In lieu of any debits to the SRA under Section 3(a)(16) of the Assistance Agreement and any credits to the SRA under Section 3(b)(5) of the Assistance Agreement with respect to taxable year 1994, Independence One shall make a credit to the SRA as of September 30, 1994, for an amount equal to the sum of the following:

(i) Thirty-five percent (35%) of the debits made to the SRA from and including January 1, 1994, through September 30, 1994, to the extent such debits --

(A) are made pursuant to the provisions of Sections 3(a)(2) and (3) of the Assistance Agreement, and

(B) are deductible on any consolidated federal income tax return of the affiliated group (within the meaning of Section 1504 of the Internal Revenue Code of 1986, as amended (the "Code")) of corporations of which MNC is the common parent ("the MNC Group");

(ii) Fifteen and five-sixteenths percent (15.3125%) of the interest accrued on the Note for the period from and including January 1, 1994, through and including September 30, 1994 (including an appropriate adjustment for the amount provided in Section 2.1(b) above), but only to the extent any such interest is excludible from the federal taxable income of Independence One; and

(iii) Fifteen and five-sixteenths percent (15.3125%) of the excess of --

(A) the costs, expenses and losses that are (I) incurred by Independence One from and including January 1, 1994, through September 30, 1994, (II) debited to the SRA during such period pursuant to the Assistance Agreement (other than pursuant to Sections 3(a)(2) and (3) thereof), and (III) deductible on any consolidated federal income tax return of the MNC Group, over

(B) the amount of undisclosed assets that are (I) identified by Independence One from and including January 1, 1994, through September 30, 1994, and (II) credited to the SRA during such period pursuant to Section 3(b)(1) of the Assistance Agreement, but only to the extent that such amounts are includible in gross income on any consolidated federal income tax return of the MNC Group.

(d) **SRA Debit**. For purposes of the Final Report, Independence One shall make a debit to the SRA as of September 30, 1994, in an amount equal to $4,556,925.00, representing $4,500,000.00 of estimated tax benefits included in the Termination Amount and $56,925.00 of interest on such amount.

(e) **Final Report Payment**.

(i) If the Final Report reflects a net credit balance in the SRA, on December 30, 1994, Independence One and MNC shall pay or cause to be paid to the FDIC Manager, by wire transfer in immediately available funds, the amount of such credit balance. No later than the close of business on December 27, 1994, the FDIC Manager shall provide Independence One with written wire transfer instructions indicating the account to which any payment required by this Section 2.4(e)(i) shall be transferred.

(ii) If the Final Report reflects a net debit balance in the SRA, on January 30, 1995, the FDIC Manager shall pay or cause to be paid to Independence One, by wire transfer in



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0013

immediately available funds, the amount of such debit balance. No later than the close of business on January 25, 1995, Independence One shall provide the FDIC Manager with written wire transfer instructions indicating the account to which any payment required by this Section 2.4(e)(ii) shall be transferred.

Section 2.5 **SRLY and Refund Payments**.

(a) **Federal SRLY Payments**. For each taxable year beginning with 1994, Independence One and MNC shall pay to the FDIC Manager, at the time and in the manner specified in Section 2.5(c), an amount equal to the sum of the following (the "Federal SRLY Payment"):

(i) Fifty percent (50%) of the excess of --

(A) an amount equal to the tax that would be imposed under Section 11(b) of the Code, or any successor provision, on the sum of (I) the taxable income of the MNC Group as reported on its original federal income tax return for the year, and (II) the amount of any net operating loss carryovers as of January 1, 1989, of Independence One or any of its subsidiaries (a "SRLY NOL") that is deducted on that year's federal income tax return, over

(B) an amount equal to the tax that would be imposed under Section 11(b) of the Code, or any successor provision, on the taxable income of the MNC

Group as reported on its original federal income tax return for the year; and

(ii) Fifty percent (50%) of the amount of any tax credit carryovers as of January 1, 1989, of Independence One or any of its subsidiaries ("SRLY Tax Credits") that are claimed on that year's federal income tax return.

(b) <u>State SRLY Payments</u>. For each taxable year beginning with 1994, Independence One and MNC shall pay to the FDIC Manager, at the time and in the manner specified in Section 2.5(c), an amount equal to the sum of the following (the "State SRLY Payment"):

(i) Fifty percent (50%) of the excess of --

(<u>A</u>) an amount equal to the tax that would be imposed under the section of the relevant state law that sets forth the rate or rates of tax (the "State Tax Rate Provision") on the sum of (I) the taxable income of Independence One and its subsidiaries as reported on each original state tax return for the year, and (II) the amount of any SRLY NOLs that is deducted on that year's state tax return, <u>over</u>

(<u>B</u>) an amount equal to the tax that would be imposed under the State Tax Rate Provision on the taxable income of Independence One and its subsidiaries as reported on each original state tax return for the year; and

(ii) Fifty percent (50%) of the amount of any SRLY Tax Credits that are claimed on that year's state tax return.

(c) Payment of Federal SRLY Payment and State SRLY Payment. Any amount owed to the FDIC Manager for any taxable year (the "Subject Year") pursuant to Section 2.5(a) or (b) shall be paid as follows:

(i) No later than thirty (30) days following the filing of a federal income tax return claiming a SRLY NOL deduction or SRLY Tax Credit described in Section 2.5(a), Independence One and MNC shall pay to the FDIC Manager an amount equal to the excess of --

(A) the Federal SRLY Payment for the Subject Year,

over

(B) fifty percent (50%) of the federal AMT liability paid for the Subject Year;

(ii) No later than thirty (30) days following the filing of any subsequent year's federal income tax return claiming a credit for the federal AMT paid in the Subject Year, Independence One and MNC shall pay to the FDIC Manager an amount equal to fifty percent (50%) of the amount claimed as a credit for the federal AMT paid in the Subject Year.

(iii) No later than thirty (30) days following the filing of a state tax return claiming a SRLY NOL deduction or SRLY Tax Credit described in Section 2.5(b), Independence One and MNC shall pay to the FDIC Manager an amount equal to the excess of --



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0016

(A) the State SRLY Payment for the Subject Year,

over

(B) fifty percent (50%) of the state AMT liability, if any, paid for the Subject Year; and

(iv) No later than thirty (30) days following the filing of any subsequent year's state tax return claiming a credit for the state AMT paid in a Subject Year, Independence One and MNC shall pay to the FDIC Manager an amount equal to fifty percent (50%) of the amount claimed as a credit for the state AMT paid in the Subject Year.

(d) **Ordering Rule and Maximum Payment**. For purposes of Section 2.5(c), federal and state AMT credits shall be treated as being utilized on a first-in first-out basis. For example, no AMT liability arising in 1994 shall be allowed as a credit unless and until all AMT liability paid in 1993 and prior years have been utilized as credits. In addition, in no event shall the aggregate amounts payable by Independence One and MNC to the FDIC Manager under subsection (c) for any Subject Year exceed the aggregate Federal SRLY Payments and aggregate State SRLY payments due for such year.

(e) **SRLY Reports**. No later than thirty (30) days following the filing of any federal income tax return and state tax return, MNC and Independence One shall provide to the FDIC Manager a Section 2.8 Report setting forth a calculation of amounts that are due to the FDIC Manager pursuant to Section 2.5(c), together with an explanation of such calculation, and shall accompany each



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0017

such Report with a copy of the tax returns that will permit the FDIC Manager independently to verify the contents of such Report.

(f) Refunds from Carryback of 1989-1991 NOLs. No later than thirty (30) days following the actual or constructive receipt by MNC of any federal income tax refunds attributable to the carryback of net operating losses of the MNC Group arising in 1989, 1990 or 1991 to taxable years of the MNC Group ending prior to January 1, 1989 (a "Section 2.5(f) Refund"), Independence One shall pay or cause to be paid to the FDIC Manager an amount equal to twenty-five percent (25%) of such Section 2.5(f) Refund, together with an amount equal to fifteen and three-fourths percent (15.75%) of an allocable portion of the interest, if any, actually or constructively received by Independence One on such Section 2.5(f) Refund. At the time any payment is made to the FDIC Manager pursuant to Section 2.5(f), Independence One shall provide the FDIC Manager with a Section 2.8 Report explaining the refund, and the calculation of the payment related thereto.

Section 2.6 Tax Indemnifications.

(a) General Provisions Regarding Adjustments Giving Rise to Payments. This Section 2.6 provides for certain tax indemnification payments to be paid to Independence One by the FDIC Manager and certain payments of additional tax benefits to be paid to the FDIC Manager by Independence One and MNC. In connection with such payments, the following provisions shall apply.

(i) If the Internal Revenue Service (the "IRS"), or a



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0018

state taxing authority proposes in writing an adjustment to a tax return which would, if sustained, require the FDIC Manager to make a payment to Independence One under any of the provisions of this Section 2.6, Independence One and MNC shall notify the FDIC Manager in writing of such proposed adjustment no later than thirty (30) days after receipt of such written proposal. No later than ninety (90) days following receipt of such notice, the FDIC Manager shall provide in writing to MNC and Independence One a statement that it acknowledges and accepts its indemnification obligations under this Section 2.6 with respect to the proposed adjustment as set forth in the notice thereof from MNC and Independence One. In the event the FDIC Manager fails to provide the written statement referred to i the preceding sentence by the date required therefor, the FDIC Manager shall be deemed to have waived its rights under this Section 2.6(a) (but not Section 2.6(a)(v) or 2.6(h)) with respect to the proposed adjustment, but shall remain fully liable for its obligations under all other provisions of this Section 2.6 and this Agreement.

(ii) Provided the FDIC Manager shall have timely provided to MNC and Independence One the written statement required by the second sentence of Section 2.6(a)(i), MNC and Independence One shall notify the FDIC Manager in writing of any decision not to contest the proposed adjustment. No later than twenty-one (21) days after

receipt of the notice described in the preceding sentence, the FDIC Manager may, in writing, direct MNC and Independence One to contest the proposed adjustment. Any such written direction from the FDIC Manager shall state that, in addition to any other indemnification obligations the FDIC Manager may have under this Agreement, the FDIC Manager agrees to indemnify and hold harmless MNC and Independence One from any and all reasonable legal, accounting and related third-party fees, cost and expenses incurred by MNC or Independence One in connection with thereafter contesting such proposed adjustment.

(iii) Following receipt of written directions to contest a proposed adjustment pursuant to Section 2.6(a)(ii), Independence One and MNC shall contest the proposed adjustment, shall keep the FDIC Manager reasonably informed as to the progress thereof, and shall consult with the FDIC Manager within a reasonable period before any significant action with respect thereto is taken or omitted.

(iv) No such contest shall be settled without the prior written consent of the FDIC Manager; provided, however, that Independence One may at any time decline to take any further action with respect to a proposed adjustment or not comply with the provisions of Section 2.6(a)(iii) by notifying the FDIC Manager in writing that it declines to take such action, and waiving its right to any indemnity payment from the FDIC Manager that would otherwise

be payable by the FDIC Manager pursuant to this Section 2.6 in respect of such adjustment. An election by Independence One not to contest any given proposed adjustment shall not affect the rights and obligations of Independence One, MNC and the FDIC Manager in respect of any other proposed adjustment unless such election not to contest adversely affects the ability to contest any other item for which Independence One is indemnified pursuant to this Section 2.6.

(v) The FDIC Manager shall not be required to make any payment required by this Section 2.6 as a result of such a proposed adjustment before the date that is thirty (30) days after Independence One, MNC and the FDIC Manager mutually agree to terminate the contest, or the proposed adjustment has been resolved in a manner requiring a payment and no further appeals are permitted.

(vi) If the IRS, or a state taxing authority proposes in writing an adjustment to a tax return which would, if sustained, require Independence One and MNC to make a payment of at least $100,000.00 to the FDIC Manager under any of the provisions of this Section 2.6, Independence One and MNC shall notify the FDIC Manager in writing of such proposed adjustment within thirty (30) days after receipt in writing thereof. Any such adjustment shall be accepted by Independence One and any further proposal to eliminate such

adjustment shall be treated as a proposed adjustment described in Section 2.6(a)(i).

(b) <u>Section 2.4(c) Adjustments</u>. If either --

(i) an action of the IRS or the U.S. Congress either permanently disallows a deduction or credit for any items described in Section 2.4(c)(i) or (iii), or requires the permanent inclusion in gross income of any portion of the interest described in Section 2.4(c)(ii), or

(ii) an action of the FDIC Manager or the FDIC's OIG causes a permanent increase or decrease in any of the items described in Section 2.4(c),

(a "Section 2.4(c) Adjustment"), then payments shall be made between Independence One, MNC and the FDIC as follows:

(iii) Independence One and MNC shall make a payment to the FDIC Manager for an amount equal to the additional credit, if any, Independence One would have made to the SRA pursuant to Section 2.4(c) had such Section 2.4(c) Adjustment been made on September 30, 1994, together with an amount equal to thirty-one and one-half percent (31.5%) of an allocable portion of the interest, if any, actually or constructively received by Independence One from the IRS as a result of such Section 2.4(c) Adjustment; and

(iv) the FDIC Manager shall make a payment to Independence One in an amount equal to the excess, if any, of the credit Independence One made to the SRA pursuant to Section 2.4(c) over the credit Independence One would have

made had such Section 2.4(c) Adjustment been made on September 30, 1994, together with an amount equal to thirty-one and one-half percent (31.5%) of an allocable portion of the interest, if any, actually or constructively paid by Independence One to the IRS as a result of such Section 2.4(c) Adjustment.

Any payment from Independence One to the FDIC Manager pursuant to Section 2.6(b)(iii) shall be made no later than thirty (30) days following the date on which MNC actually or constructively receives any tax refunds attributable to the Section 2.4(c) Adjustment. At the time any payment is made to the FDIC Manager pursuant to Section 2.6(b)(iii), Independence One shall provide the FDIC Manager with a Section 2.8 Report explaining the Section 2.4(c) Adjustment and the calculation of the payment related thereto. Any payment from the FDIC Manager to Independence One pursuant to Section 2.6(b)(iv) shall be made no later than thirty (30) days following the date on which MNC delivers to the FDIC Manager a Section 2.8 Report explaining the Section 2.4(c) Adjustment and the calculation of the payment related thereto.

(c) <u>**Section 2.5 Adjustments**</u>. If either an action of the IRS, a state taxing authority or the U.S. Congress causes an increase or decrease in the amount of a Federal SRLY Payment, a State SRLY Payment or a Section 2.5(f) Refund (a "Section 2.5 Adjustment"), then payments shall be made between Independence One, MNC and the FDIC as follows:



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0023

(i) If the Section 2.5 Adjustment causes an increase in the amount of a Federal SRLY Payment, a State SRLY Payment or a Section 2.5(f) Refund, Independence One shall make a payment to the FDIC Manager in an amount equal to the increase in payments Independence One previously would have made to the FDIC Manager pursuant to Section 2.5(c) or (f) and this Section 2.6(c) with respect to the affected Federal SRLY Payment, State SRLY Payment or Section 2.5(f) Refund had such Section 2.5 Adjustment been made in the year in which the Federal SRLY Payment or State SRLY Payment arose, or the year in which the Section 2.5(f) Refund was constructively received, together with an amount equal to thirty-one and one-half percent (31.5%) of an allocable portion of the interest, if any, actually or constructively received by Independence One from the IRS or state taxing authority as a result of the Section 2.5 Adjustment; thereafter, any future payments required pursuant to Section 2.5(c) with respect to an affected Federal SRLY Payment or State SRLY Payment shall be made based on the adjusted amount of such Payment; and

(ii) If the Section 2.5 Adjustment causes a decrease in the amount of a Federal SRLY Payment, a State SRLY Payment or a Section 2.5(f) Refund, the FDIC Manager shall make a payment to Independence One in an amount equal to the excess of the payments Independence One previously made to the FDIC Manager pursuant to Section 2.5(c) or (f) and this

Section 2.6(c) with respect to the affected Federal SRLY Payment, State SRLY Payment or Section 2.5(f) Refund, over the payments Independence One would have made had such Section 2.5 Adjustment been made in the year in which the Federal SRLY Payment, State SRLY Payment or Section 2.5(e) Refund arose, together with an amount equal to thirty-one and one-half percent (31.5%) of an allocable portion of the interest, if any, actually or constructively paid by Independence One to the IRS or state taxing authority as a result of the Section 2.5 Adjustment; thereafter, any future payments required pursuant to Section 2.5(c) with respect to the affected Federal SRLY Payment or State SRLY Payment shall be made based on the adjusted amount of such payment. Any payment from Independence One and MNC to the FDIC Manager pursuant to Section 2.6(c)(i) shall be made no later than thirty (30) days following the date on which MNC actually or constructively receives any tax refunds attributable to the Section 2.5 Adjustment. At the time any payment is made to the FDIC Manager pursuant to Section 2.6(c)(i), Independence One shall provide the FDIC Manager with a Section 2.8 Report explaining the Section 2.5 Adjustment and the calculation of the payment related thereto. Any payment from the FDIC Manager to Independence One pursuant to Section 2.6(c)(ii) shall be made no later than thirty (30) days following the date on which MNC delivers to the FDIC Manager a Section 2.8 Report explaining the



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0025

Section 2.5 Adjustment and the calculation of the payment related thereto.

(d) **Adjustments to 1989-1993 Indemnification Net Tax Benefits**. If either an action of either the IRS or the U.S. Congress permanently disallows a deduction for any item described in Section 3(a)(2) or (3) of the Assistance Agreement ("ITB Items") or an action of the FDIC Manager or FDIC OIG causes a permanent decrease in the amount of any ITB Item (either being an "ITB Item Adjustment"), then a payment shall be made from the FDIC Manager to Independence One in the amount of $351.61 for each $1,000.00 of permanently disallowed deductions for, or permanent decrease in the amount of, ITB Items, provided, however, that the maximum amount payable by the FDIC Manager pursuant to this Section 2.6(d) shall be $4,094,029.00, together with an amount equal to thirty-one and one-half percent (31.5%) of an allocable portion of the interest, if any, actually or constructively paid by Independence One to the IRS as a result of such ITB Item Adjustment. Any payment from the FDIC Manager to Independence One pursuant to this Section 2.6(d) shall be made no later than thirty (30) days following the date on which MNC delivers to the FDIC Manager a Section 2.8 Report explaining the ITB Item Adjustment and the calculation of the payment related thereto.

(e) **1989-1993 Subsidiary Tax Benefits**. If either --

(i) an action of the IRS or the U.S. Congress either disallows a deduction in any of the taxable years 1989



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0026

through 1993 for any "Subsidiary Tax Benefit Items" (as defined below) or decreases or increases the amount of Subsidiary Tax Benefit Items allowed to be claimed as a deduction by the MNC Group in any of such years, or

(ii) an action of the FDIC Manager or the FDIC OIG causes an increase or decrease in any Subsidiary Tax Benefit Items,

(an "STB Item Adjustment"), then payments shall be made between Independence One, MNC and the FDIC Manager as follows:

(iii) the FDIC Manager shall pay to Independence One $42.55 for each $1,000.00 of deduction disallowances for, or decreases in the amount of, Subsidiary Tax Benefit Items, and

(iv) Independence One shall pay to the FDIC Manager $42.55 for each $1,000.00 of increases in the amount of Subsidiary Tax Benefit Items,

in either case together with an amount equal to thirty-one and one-half percent (31.5%) of an allocable portion of the interest, if any, actually or constructively paid (in the case of a disallowed deduction or decrease in the amount of Subsidiary Tax Benefit Items) or received (in the case of an increase in the amount of Subsidiary Tax Benefit Items) by Independence One to or from the IRS as a result of such STB Item Adjustment.

The maximum amount of any payment (exclusive of interest) from the FDIC Manager to Independence One pursuant to this Section 2.6(e) shall not exceed the sum of $8,027,208.00 and any

amount paid by Independence One to the FDIC Manager pursuant to this Section 2.6(e).

(v) For purposes of this Agreement, "Subsidiary Tax Benefit Items" means:

(A) Any net operating loss carryovers as of January 1, 1989, of any subsidiary of Independence One which is claimed as a deduction in arriving at the federal income tax liability for the MNC Group for 1989, 1990, 1991, 1992 or 1993; and

(B) Any deduction for a write-off of the following assets of subsidiaries of Independence One: (I) principal and accrued interest on the so-called "VMS Loans," (II) the asset known as the "59th Street Joint Venture," and (III) the asset known as the "Stamford Partnership."

(vi) Any payment from the FDIC Manager to Independence One pursuant to Section 2.6(e)(iii) shall be made no later than thirty (30) days following the date on which MNC delivers to the FDIC Manager a Section 2.8 Report explaining the STB Item Adjustment and the calculation of the payment related thereto. Any payment from Independence One to the FDIC Manager pursuant to Section 2.6(e)(iv) shall be made no later than thirty (30) days following the date on which MNC actually or constructively receives any tax refunds attributable to the STB Item Adjustment. At the time any payment is made to the FDIC Manager pursuant to

Section 2.6(e)(iv), Independence One shall provide the FDIC Manager with a Section 2.8 Report explaining the STB Item Adjustment and the calculation of the payment related thereto.

(f) **Adjustments to 1989-1993 Other Tax Benefits Items**.

(i) **Other Tax Benefit Items**. The FDIC Manager, MNC and Independence One agree that the following items in the following amounts were properly accounted for under the terms of the Assistance Agreement as Tax Benefit Items or Tax Detriment Items (as those terms are defined in the Assistance Agreement) for taxable years 1989 through 1993, inclusive (the total amount of Tax Benefit Items and Tax Detriment Items are referred to herein as "Other Tax Benefit Items"):

| Item | Amount |
|---|---|
| Interest on Note | $282,479,221.00 |
| Covered Asset Losses | 102,758,503.00 |
| Guaranteed Yield | 68,194,502.00 |
| Deposit and World Loan Subsidy | 58,137,324.00 |
| Mark to Market Items | 13,636,701.00 |
| OID, §481 Adjustment, and Vacation Accrual | 7,703,080.00 |
| Other Assistance | 12,111,241.00 |
| FSLIC Share of REO Gains | (5,037,733.00) |
| FHLB Stock | (8,064,200.00) |
| §3(b)(1) Credits | (11,727,704.00) |
| Total | $520,190,935.00 |

(ii) **FDIC Manager Payments**. If either --

(A) an action of the IRS or the U.S. Congress permanently decreases the amount of Other Tax Benefit Items,



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0029

(B) an action of the IRS or the U.S. Congress forever precludes, for reasons other than adjustments to taxable income, MNC and Independence One from claiming, for federal income tax purposes, as a credit the amount of the MNC Group's alternative minimum tax credit carryforward as of January 1, 1994, which amount the parties hereto agree is $54,187,411.00 (the "AMT Credit"), or

(C) an action of the FDIC Manager or the FDIC OIG causes a permanent decrease in the amount of Other Tax Benefit Items,

(an OTB Item Adjustment"), then payments shall be made to Independence One from the FDIC Manager as set forth in Section 2.6(f)(iii). For purposes of determining the amount of any payment to be made pursuant to Section 2.6(f)(iii) as a result of MNC and Independence One being forever precluded from claiming any portion or all of the AMT Credit as a credit for federal income tax purposes, the amount of Other Tax Benefit Items shall be deemed to be permanently decreased by $2.857143 for each $1.00 of such AMT Credit.

(iii) If there is an OTB Item Adjustment, the FDIC Manager shall pay to Independence One --

(A) $175.00 for each $1,000.00 of decreases in the amount of Other Tax Benefit Items, for the first $171,929,851.00 of such decreases;

(B) $57.225 for each additional $1,000.00 of decreases in the amount of Other Tax Benefit Items, for

the next $14,795,029.00 of such decreases, plus interest on such amount at the rate of fifteen percent (15%) compounded annually from September 30, 1994, until the date of payment, but in no event may the amount determined in this Section 2.6(f)(iii)(B) exceed $2,589,130.00;

(C) $65.80 for each additional $1,000.00 of decreases in the amount of Other Tax Benefit Items, for the next $38,164,897.00 of such decreases, plus interest on such amount at the rate of fifteen percent (15%) compounded annually from September 30, 1994, until the date of payment, but in no event may the amount determined in this Section 2.6(f)(iii)(C) exceed $6,678,857.00;

(D) $75.60 for each additional $1,000.00 of decreases in the amount of Other Tax Benefit Items, for the next $38,164,897.00 of such decreases, plus interest on such amount at the rate of fifteen percent (15%) compounded annually from September 30, 1994, until the date of payment, but in no event may the amount determined in this Section 2.6(f)(iii)(D) exceed $6,678,857.00;

(E) $86.975 for each additional $1,000.00 of decreases of Other Tax Benefit Items, for the next $40,307,754.00 of such decreases, plus interest on such amount at the rate of fifteen percent (15%) compounded



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0031

annually from September 30, 1994, until the date of payment, but in no event may the amount determined in this Section 2.6(f)(iii)(E) exceed $7,053,857.00;

(F) $100.10 for each additional $1,000.00 of decreases in the amount of Other Tax Benefit Items, for the next $23,388,600.00 of such decreases, plus interest on such amount at the rate of fifteen percent (15%) compounded annually from September 30, 1994, until the date of payment, but in no event may the amount determined in this Section 2.6(f)(iii)(F) exceed $4,093,005.00; and

(G) $72.912 for each $1,000.00 of decreases in the amount of Other Tax Benefit Items, for the remaining $193,439,907.00 of such Other Tax Benefit Items.

(H) Any payment from the FDIC Manager required pursuant to this Section 2.6(f)(iii) shall be made together with an amount equal to thirty-one and one-half percent (31.5%) of an allocable portion of the interest, if any, actually or constructively paid by Independence One to the IRS as a result of the OTB Item Adjustment giving rise to the FDIC Manager's obligation to make such payment. The interest payment described in this Section 2.6(f)(iii)(H) shall not be subject to any maximum payment restrictions or caps set forth in Sections 2.6(f)(iii)(A) - (G).

(iv) **Timing of FDIC Manager Payments**. Any payment from the FDIC Manager to Independence One pursuant to Section 2.6(f)(iii) shall be made no later than thirty (30) days following the date on which MNC delivers to the FDIC Manager a Section 2.8 Report explaining the OTB Item Adjustment and the calculation of the payment related thereto, and, except for any payment pursuant to Section 2.6(f)(iii)(G) (with respect to which there are no conditions), a statement that the conditions to such payment set forth in Section 2.6(f)(v) have been satisfied.

(v) **Conditions to FDIC Payments**.

(A) Payments required pursuant to Section 2.6(f)(iii)(A), together with interest under Section 2.6(f)(iii)(H), shall be made as (I) the cumulative post-1993 federal taxable income of the MNC Group exceeds (II) the excess of (1) $171,929,851.00, over (2) the amount of permanent decreases in Other Tax Benefit Items (but not in excess of $171,929,851.00).

(B) For each $2,333.00 of cumulative post-1993 federal taxable income of the MNC Group in excess of $171,929,851.00, the FDIC Manager shall pay to Independence One the payment required pursuant to Sections 2.6(f)(iii)(B), (C), (D), (E) and (F) for each $1,000.00 of permanent decreases in the amount of Other Tax Benefit Items in excess of $171,929,851.00.

(vi) **Independence One Payment**. If either --



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0033

(A) an action of the IRS or the U.S. Congress permanently increases the amount of Other Tax Benefit Items, or

(B) an action of the FDIC Manager or the FDIC OIG permanently increases the amount of Other Tax Benefit Items,

then Independence One and MNC shall pay to the FDIC Manager an amount equal to seventeen and one-half percent (17.5%) of the increase, together with an amount equal to thirty-one and one-half percent (31.5%) of an allocable portion of the interest, if any, actually or constructively received by Independence One from the IRS as a result of such increase. Any payment from Independence One to the FDIC Manager pursuant to this Section 2.6(f)(vi) shall be made no later than thirty (30) days following the date on which MNC actually or constructively receives any tax refunds attributable to the increase. At the time any payment is made to the FDIC Manager pursuant to this Section 2.6(f)(vi), Independence One shall provide the FDIC Manager with a Section 2.8 Report explaining the increase and the calculation of the payment related thereto.

(g) **Penalties**. For purposes of this Section 2.6, if Independence One actually or constructively pays a penalty (other than a penalty imposed for negligence or willful misconduct) to the IRS or a state tax authority, the FDIC Manager shall pay Independence One an allocable portion of such penalty.

(h) **Fees and Costs**. Except to the extent that a greater payment is required pursuant to Section 2.6(a)(ii), the FDIC Manager agrees to pay MNC thirty-one and one-half percent (31.5%) of the amount of any reasonable legal, accounting and related fees and costs incurred in connection with any administrative submission, protest or subsequent proceedings or litigation concerning a challenge by the IRS or a state taxing authority to any items, which if the IRS or state taxing authority prevails, would give rise to a payment from the FDIC Manager to Independence One pursuant to this Section 2.6, provided that the FDIC Manager shall be given written notice within thirty (30) days of the receipt of a written notice from the IRS or state taxing authority which proposes adjustments that could give rise to a payment from the FDIC Manager to Independence One pursuant to this Section 2.6, and provided further, that the FDIC Manager shall have reasonable participation rights with respect to any such submission, protest, subsequent proceedings or litigation; provided, however, that the content of all such submissions and protests and the conduct of all such proceedings and litigation shall remain in the ultimate control of Independence One and MNC.

(i) **Sections 2.6(g) and (h) Payments**. The FDIC Manager shall make any payments required under Section 2.6(g) or (h) within thirty (30) days of Independence One's or MNC's providing the FDIC Manager with a Section 2.8 Report explaining the payment and the calculation of the amount thereof.



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0035

(j) <u>**Definition of "Permanent"**</u>. For purposes of this Section 2.6, the term "permanent" or "permanently" shall mean:

(i) any act that prohibits MNC or Independence One from ever claiming a loss or expense deduction in any taxable year beginning after December 31, 1988;

(ii) any act that requires MNC or Independence One to include in taxable income for any taxable year beginning after December 31, 1988, any assistance paid pursuant to the Assistance Agreement or this Agreement or any interest paid pursuant to the Note, but only if MNC or Independence One is not allowed a tax deduction in a future taxable year for the amount of assistance previously included in taxable income; or

(iii) any act by the FDIC Manager or the FDIC OIG which results in Independence One or MNC returning to the FDIC Manager any prior assistance paid under the Assistance Agreement or this Agreement or receiving from the FDIC Manager any additional assistance under the Assistance Agreement or this Agreement.

(k) <u>**Adjustments Pursuant to Treasury Regulations Section 1.597-8**</u>. If it is determined as a result of an IRS action that any portion of the Termination Amount is not a payment that represents a prepayment of (or a payment in lieu of) a fixed or contingent right to federal financial assistance within the scope of Treasury Regulations section 1.597-8, then the FDIC Manager

shall make a payment to Independence One in an amount necessary to put Independence One in the position that it would have been in had such determination not been made. Any payment from the FDIC Manager to Independence One pursuant to this paragraph shall be made no later than thirty (30) days following the date on which MNC delivers to the FDIC Manager a Section 2.8 Report explaining the effect of the determination and a calculation of the payment required as a result thereof.

**Section 2.7** **<u>Reserve for Bad Debts</u>.** No later than January 30, 1995, Independence One shall file with the IRS a request for permission to change its method of tax accounting for bad debts from the reserve method to the specific charge-off method beginning in calendar year 1995. At the time of such filing, Independence One shall provide a copy of the request to the FDIC Manager. If such request is granted, Independence One shall not file a request for permission, or otherwise seek, to return to the reserve method until the year after the year in which the net amount of any adjustments required by Section 481 of the Code resulting from the change to the specific charge-off method has been fully taken into account. Independence One shall provide to the FDIC Manager a copy of any IRS approval or denial of such request within thirty (30) days after the receipt of such approval or denial. If such request is denied, Independence One shall cause its reserve for bad debts to be reduced to zero over the same period and at least the same rate that it would have been required to recapture its bad debt reserve as of January 1,

1995, had the request been approved. If such request is denied and Independence One does not comply with the immediately preceding sentence, then Independence One and MNC shall pay to the FDIC Manager the amount of $300,000.00, together with interest at the Late Payment Rate (as defined in Section 11.14) from October 1, 1994, until the date of payment.

**Section 2.8** **<u>Section 2.8 Reports</u>**. Any Section 2.8 Report required to be submitted by Independence One and MNC to the FDIC Manager pursuant to Section 2.5(e) or 2.6 shall be (A) signed by the senior corporate officer responsible for the preparation and filing of corporate tax returns, (B) certified by such officer that all calculations have been determined pursuant to and in conformance with this Agreement, and (C) accompanied by such documents and materials as are necessary for the FDIC Manager to verify the calculations. If the FDIC Manager reasonably believes that it needs additional documents or materials that are in the possession of Independence One and MNC, Independence One and MNC shall provide such additional documents and materials upon the request of the FDIC Manager.

## ARTICLE 3
## TRANSFER OF LITIGATION

**Section 3.1** **<u>Transfer</u>**. Effective at the close of business on September 30, 1994, the FDIC Manager shall assume full responsibility for managing and conducting all proceedings relating to the litigation cases listed on Exhibit 3.1 hereto (the "Transferred Cases"). As promptly as practicable after

September 30, 1994, Independence One shall advise its outside counsel in writing of the FDIC's assumption of responsibility for managing the Transferred Cases, and shall direct such counsel to prepare those documents reasonably necessary to designate new counsel of record for the Transferred Cases. The FDIC Manager, MNC, and Independence One shall cooperate in taking all steps reasonably necessary to transfer full responsibility for the Transferred Cases to the FDIC Manager.

**Section 3.2** __**Paying Agent Services**__. For a period of up to ninety (90) days after September 30, 1994, Independence One shall serve as the paying agent on behalf of the FDIC Manager for all legal fees and expenses incurred with respect to work performed in connection with the Transferred Cases on or after September 30, 1994, and shall pay all such fees and expenses in a timely manner. The FDIC Manager shall reimburse Independence One for such payments within thirty (30) days after receipt by the FDIC Manager of a written notice from Independence One stating that such payments have been made and requesting reimbursement therefor. Any and all such payments made by Independence One on behalf of the FDIC Manager shall not be considered to be assistance to Independence One under the Assistance Agreement, this Agreement, or both such Agreements.

**Section 3.3** __**Costs and Indemnifications**__. Effective at the close of business on September 30, 1994, the FDIC Manager shall assume all responsibility for paying all legal fees and expenses incurred in connection with the Transferred Cases, and shall



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0039

indemnify and hold harmless the Independence One Indemnitees (as defined in Section 10.1) from all claims for such legal fees and expenses from and after September 30, 1994, pursuant to Article 10 of this Agreement.

**ARTICLE 4**
**DIVISION OF RESOLUTIONS ("DOR") POST-CLOSING AUDIT**

**Section 4.1** **Generally.** Following the execution of this Agreement, the FDIC Manager or its designee may audit the following matters:

(a) the assistance paid to Independence One under the Assistance Agreement (other than any matters relating to taxes) for the period commencing July 1, 1994, and ending September 30, 1994;

(b) the debits to the SRA pursuant to Section 3(a)(16) of the Assistance Agreement and the credits to the SRA pursuant to Section 3(b)(5) of the Assistance Agreement, in each case only to the extent any such debits or credits relate to taxable years 1991, 1992, and 1993;

(c) the calculations pursuant to Section 2.4(c); and

(d) the payments and calculations pursuant to Sections 2.5, 2.6, 10.1, and 11.14.

The audit of the matters described in Section 4.1(a), (b) and (c) (the "DOR Post-Closing Audit") shall be completed by no later than September 30, 1995. The audit of the matters described in Section 4.1(d) shall be completed by no later than one (1) year following the date on which Independence One or MNC



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0040

delivers the notice described in Section 2.5 covering the matters being audited or the payments under Section 2.6, 10.1 or 11.14 to be audited have been made (as the case may be). Except as described in this Article 4, the FDIC Manager shall have no rights to audit or propose adjustments to any matters relating to the SRA or the assistance paid under the Assistance Agreement.

**Section 4.2** __**Payment**__. No later than forty (40) days after the date of completion of the DOR Post-Closing Audit:

**(a)** The FDIC Manager shall pay to Independence One the amount, if any, by which (i) any net adjustment in Independence One's favor determined pursuant to this Article 4 (excluding any DOR Audit Disputed Items (as defined in Section 4.3)), __exceeds__ (ii) any net adjustment in the FDIC Manager's favor determined pursuant to this Article 4 (excluding any DOR Audit Disputed Item), together with interest on such excess at the rate equal to the Interest Rate (as defined below) from and including October 1, 1994, to but excluding the date of such payment (the term "Interest Rate" shall mean, for a particular month or other period, the arithmetic average of the weekly auction rates adjusted to a bond equivalent yield basis for three (3)-month bills issued and settled by the United States Department of Treasury during such month or other period (or, if there is no auction or only one auction for any period, the last auction rate) as reported by __The Wall Street Journal__, or, if not so reported, then by such other recognized national publication as mutually agreed upon by the parties hereto); or

(b) Independence One shall pay to the FDIC Manager the amount, if any, by which (i) any net adjustment in the FDIC Manager's favor determined pursuant to this Article 4 (excluding any DOR Audit Disputed Item), exceeds (ii) any net adjustment in Independence One's favor determined pursuant to this Article 4 (excluding any DOR Audit Disputed Item), together with interest on such excess at the Interest Rate from and including October 1, 1994, to but excluding the date of such payment.

Section 4.3 DOR Post-Closing Audit Procedures. The parties hereto agree that the DOR Post-Closing Audit, and any adjustments as a result thereof, shall be conducted and determined in accordance with the following procedures:

(a) Until completion of the DOR Post-Closing Audit, Independence One and MNC shall cause to be made available to the FDIC Manager or its designees, at such reasonable times as the FDIC Manager may reasonably request, all books, papers, records and information of any kind in the possession of Independence One or MNC relating to any and all matters within the scope of the DOR Post-Closing Audit; provided, however, that neither Independence One nor MNC shall be required to make available to the FDIC Manager or its designee any information or documentation that is subject to the attorney-client, work-product or any similar privilege, unless the cost of which was reimbursed to Independence One or MNC under the Assistance Agreement or this Agreement. Such materials shall be made available to the FDIC

Manager or its designee at MNC's headquarters or such other location reasonably agreed to by Independence One or MNC.

(b) Within thirty (30) days after Independence One and MNC have received a copy of the final audit report resulting from the DOR Post-Closing Audit (the "Final Audit Report") from the FDIC Manager, Independence One or MNC shall provide the FDIC Manager with a written list of all items in the Final Audit Report with which Independence One or MNC agrees (all other items in the Final Audit Report are referred to herein as the "DOR Audit Disputed Items"). Any DOR Audit Disputed Items shall be resolved in accordance with the procedures specified in Article 5 hereof.

**Section 4.4** __Other Adjustments__. Within thirty (30) days after completion of any audit pursuant to Section 4.1(d) hereof, the FDIC Manager shall deliver to Independence One and MNC a report setting forth any proposed adjustments arising from such audit and the basis therefor (an "Adjustment Report"). Within thirty (30) days after Independence One and MNC have received a copy of such Adjustment Report, Independence One or MNC shall provide the FDIC Manager with a written list of all items in such Adjustment Report with which Independence One or MNC agrees; all other proposed adjustments in such Adjustment Report shall be deemed to be disputed and shall be resolved in accordance with the procedures set forth in Article 5 hereof.

**ARTICLE 5**
**__DISPUTE RESOLUTION__**

Section 5.1 **Disputes**. Any disputes arising under this Agreement or the Assistance Agreement shall be resolved through the procedures specified under this Article 5. The resolution of any disputes under this Article 5 (whether through the negotiation, mediation or arbitration procedures specified herein) shall be final and binding upon the FDIC Manager, Independence One and MNC, and specifically enforceable under applicable law. Independence One and MNC shall be deemed one party in proceedings under this Article 5. The procedures set forth in this Article 5 shall be initiated by the conduct of a face-to-face meeting: (a) within forty-five (45) days after the receipt by Independence One and MNC of the Final Audit Report if there are any DOR Audit Disputed Items, (b) within forty-five (45) days after the receipt by Independence One and MNC of an Adjustment Report if any proposed adjustments set forth therein are disputed, or (c) within fifteen (15) days after the delivery of a written notice by a party hereto to the other party hereto stating that the claiming party has a claim against the other party, describing in reasonable detail the nature and amount of such claim and the basis therefor.

Section 5.2 **Negotiation**. Prior to the submission of any dispute through the mediation or arbitration procedures specified in Section 5.3 or 5.4 hereof, the parties to the dispute shall make every effort in good faith to resolve such dispute by mutual agreement within thirty (30) days following the initiation of the procedures set forth in this Article 5 (the date on which such