thirty (30)-day period expires, or any extension of such period as the parties to the dispute may mutually agree to in writing, is herein called the "Claim Resolution Deadline Date").

Section 5.3 **Mediation Procedures**. If the parties to a dispute have not resolved such dispute pursuant to the procedures set forth in Section 5.2 by the Claim Resolution Deadline Date, then the mediation procedures provided in this Section 5.3 shall apply.

(a) Within thirty (30) days after the Claim Resolution Deadline Date, the parties to the dispute shall jointly appoint an independent and impartial mediator (the "Mediator"). If the parties to the dispute are unable to agree on the appointment of the Mediator, then application shall be immediately made to the CPR Institute for Dispute Resolution (the "CPR") for the selection and appointment of the Mediator. The Mediator shall establish procedures designed to facilitate the mediation of such dispute, shall meet with representatives of the parties to the dispute and take other appropriate actions to facilitate a negotiated or other voluntary resolution of such dispute; and

(b) If the parties to the dispute have not resolved the dispute within thirty (30) days of the appointment of the Mediator or such later date as to which they mutually agree in writing (the "Mediation Deadline Date"), then the arbitration procedures specified in Section 5.4 hereof shall apply.

Section 5.4 **Arbitration**.



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0045

(a) If the parties to the dispute have not resolved the dispute by the Mediation Deadline Date, the parties to the dispute shall jointly select an independent and impartial arbitrator (the "Arbitrator"). The Arbitrator shall have such expertise as the parties to the dispute to be resolved by such Arbitrator agree is relevant. The Arbitrator may be removed only by unanimous action of the parties. If the parties hereto are unable to agree upon the selection of the Arbitrator within thirty (30) days after the Mediation Deadline Date or such later date as to which they mutually agree in writing, application shall be made to the CPR for the selection and appointment of the Arbitrator.

(b) The arbitration proceeding shall be conducted in accordance with the then current CPR Rules for Non-Administered Arbitration of Business Disputes to the extent that such Rules are not inconsistent with this Article 5. The Arbitrator may modify the procedures set forth in such Rules from time to time with the prior approval of the parties to such dispute. The place of such arbitration shall be Washington, D.C., or such other location agreed to by the parties.

(c) The arbitration proceedings shall be concluded within one hundred eighty (180) days of the appointment of the Arbitrator or such later date as the parties to the dispute mutually agree in writing. Within thirty (30) days of the conclusion of the arbitration proceedings, the Arbitrator shall adopt without modification the position of one of the parties,



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0046

reject the position of the other party, and shall present to the parties a written statement of his or her determination regarding the dispute. Failure to submit a position by any party shall be deemed an acceptance by such party of the other party's position, and shall constitute a final, binding, and specifically enforceable decision against such party.

Section 5.5 __Costs and Expenses__. The FDIC Manager shall pay one-half of the fees and expenses of the Mediator and/or the Arbitrator and Independence One and/or MNC shall pay the other half thereof. Except as otherwise provided in the preceding sentence, each party shall bear all costs and expenses incurred by it in connection with the conduct of the procedures described in this Article 5.

Section 5.6 __Confidentiality; Precedential Effect__. Any dispute resolution proceeding (including without limitation any mediation proceeding) held pursuant to this Article 5 shall not be public. In addition, except as may be required by law, each party, their respective representatives, the Mediator and the Arbitrator shall strictly maintain the confidentiality of all issues, disputes, arguments, positions, interpretations, awards, determinations and decisions of any such proceeding, as well as all information, attachments, enclosures, exhibits, summaries, compilations, studies, analyses, notes, documents, statements, schedules and other similar items associated therewith. The resolution of any dispute pursuant to the negotiation or mediation procedures specified in Sections 5.2 and 5.3 hereof



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0047

shall constitute precedent regarding any subsequent dispute under this Article 5 only if the parties to such dispute so specify in writing as part of such resolution. The resolution of any dispute pursuant to the arbitration procedures specified in Section 5.4 shall constitute precedent regarding any subsequent dispute unless otherwise determined by the Arbitrator.

**ARTICLE 6**
**FDIC'S OFFICE OF INSPECTOR GENERAL ("OIG") MATTERS**

**Section 6.1 Maintenance of Records.** Independence One and MNC shall maintain, for a period of not less than five (5) years from September 30, 1994, all books, papers, records, and information of any kind relating to any and all matters subject to the Assistance Agreement, this Agreement, or both such Agreements, including any such materials or information in the possession or control of Independence One or MNC or any of their affiliates, subsidiaries, agents or counsel (including, but not limited to, tax returns and amended tax returns for any taxable years specified by the FDIC Manager or its designee).

**Section 6.2 OIG Access to Books and Records.** Independence One and MNC shall cause to be made available to the FDIC's OIG, at such reasonable times as the FDIC's OIG may specify, all books, papers, records, and information described in Section 6.1 during the period provided therein; provided, however, that neither Independence One nor MNC shall be required to make available to the FDIC's OIG or its designee any information or documentation that is subject to the attorney-client, work-

product or any similar privilege, unless the cost of which was reimbursed to Independence One or MNC under the Assistance Agreement or this Agreement. Such materials shall be made available to the FDIC Manager or its designee at MNC's headquarters or such other location reasonably agreed to by Independence One or MNC.

**Section 6.3** __OIG Audits and Examinations__. Following the execution of this Agreement, the FDIC's OIG may audit Independence One, MNC or any of their respective affiliates or subsidiaries with respect to the following matters:

(a) the assistance paid to Independence One under the Assistance Agreement (other than any matters relating to taxes) for periods commencing on or after October 1, 1992, and ending on or before September 30, 1994;

(b) the debits to the SRA pursuant to Section 3(a)(16) of the Assistance Agreement and the credits to the SRA pursuant to Section 3(b)(5) of the Assistance Agreement, in each case only to the extent any such debits or credits relate to taxable years 1991, 1992, and 1993;

(c) the calculations pursuant to Section 2.4(c); and

(d) the payments and calculations pursuant to Sections 2.5, 2.6, 10.1, and 11.14.

Such audits shall be conducted by the FDIC's OIG at its own expense but, if requested by the FDIC's OIG, with the reasonable assistance of Independence One's or MNC's respective directors, officers, and employees, whose salaries and expenses shall be

paid by Independence One or MNC without reimbursement from the FDIC.

Section 6.4 Other Rights. Nothing in this Agreement shall be construed to prevent or impair the audit and investigative authority of the FDIC's OIG pursuant to the Inspector General Act of 1977, as amended.

## ARTICLE 7
## REPRESENTATIONS AND WARRANTIES

Section 7.1 Representations and Warranties of Independence One and MNC. To induce the FDIC Manager to enter into this Agreement and to consummate the transactions contemplated hereby, Independence One and MNC severally make the following representations and warranties (but only to the extent applicable to each party) to the FDIC Manager as of the date hereof, all of which shall survive the execution and delivery of this Agreement and the consummation of such transactions:

(a) Corporate Existence.

(i) Independence One is a federally chartered stock savings bank duly organized, validly existing, and in good standing under the laws of the United States of America, with all requisite power and authority to (A) own and operate its properties and conduct its business as currently conducted by it and (B) engage in the activities and transactions described in and contemplated by this Agreement.



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0050

(ii) MNC is a Michigan corporation duly organized, validly existing, and in good standing under the laws of the State of Michigan with all requisite power and authority to (A) own and operate its properties and conduct its business as now conducted by it and (B) engage in the activities and transactions described in and contemplated by this Agreement.

(b) **Due Authorization.** Independence One and MNC each has full power and authority to execute, deliver, and perform this Agreement, and has taken all necessary action to authorize the execution, delivery, and performance of this Agreement in accordance with its terms.

(c) **Binding Agreement.** This Agreement has been duly authorized, executed, and delivered by Independence One and MNC and, when duly authorized, executed, and delivered by the FDIC Manager, this Agreement shall constitute a legal, valid, and binding obligation of Independence One and MNC, enforceable against each of them in accordance with its terms except as such enforceability may be limited by (i) bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally, and (ii) general equitable principles (regardless of whether the issue of enforceability is considered in a proceeding in equity or at law).

(d) **Compliance with Law.**

(i) Independence One and MNC are not, and their respective subsidiaries are not, in violation of any

statute, regulation, order, decision, judgment, or decree of, or any restriction imposed by, the United States of America, any state, municipality, or other political subdivision thereof, or any agency of the foregoing, or any court or other competent tribunal having jurisdiction over Independence One, MNC, or their respective subsidiaries or any of their assets, or any foreign government or agency thereof having jurisdiction over Independence One, MNC, or their respective subsidiaries or any of their assets, or any securities exchange or securities quotation system on which Independence One, MNC, or any of their respective subsidiaries' securities are listed or quoted, in respect of the conduct of their business or the ownership of their properties, which violations, either individually or in the aggregate, would materially and adversely affect Independence One's or MNC's ability to observe or perform its obligations under this Agreement.

(ii) The execution, delivery, and performance by Independence One and MNC of this Agreement will not materially violate or conflict with any provision of any applicable law or regulation, or any order, writ, judgment or decree of any court or governmental authority to which Independence One or MNC is otherwise subject, which violation or conflict, either individually or in the aggregate, would materially and adversely affect

Independence One's or MNC's ability to observe or perform its obligations under this Agreement.

(e) <u>Compliance with Obligations</u>.

(i) Independence One and MNC are not in violation or breach of, or in default under, any obligation, agreement, covenant, or condition contained in their respective bylaws or charter, and Independence One and MNC are not in violation or in breach of or in default under any contract, lease, or other instrument to which it is respectively a party (or which is binding on it or its assets), which violation, breach or default, either individually or in the aggregate, would materially and adversely affect Independence One's or MNC's ability to observe or perform its obligations under this Agreement.

(ii) The execution, delivery, and performance by Independence One and MNC of this Agreement does not and will not materially (<u>A</u>) violate or conflict with any provision of the respective articles of association or organization or bylaws of Independence One and MNC, or (<u>B</u>) result in a violation or breach of, or default under, any contract, lease, or other instrument to which Independence One or MNC is a party (or which is binding on it or any of its assets), which violation, conflict, breach or default, either individually or in the aggregate, would materially and adversely affect Independence One's or MNC's ability to observe or perform its obligations under this Agreement.



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0053

(f) **Approvals and Consents**. All material governmental approvals and other third party consents that are required in connection with the execution, delivery, or performance of this Agreement or the transactions contemplated by this Agreement by Independence One and MNC, if any, have been obtained.

(g) **Litigation**. There is no legal action, suit, investigation, or proceeding pending (in which Independence One or MNC is a party) or, to Independence One's or MNC's knowledge, threatened against or affecting Independence One or MNC (whether or not Independence One or MNC is a party thereto) or any of their respective subsidiaries or their assets which questions the validity of this Agreement, or any of the transactions contemplated hereby, which, either individually or in the aggregate, would materially and adversely affect Independence One's or MNC's ability observe or perform its obligations under this Agreement.

(h) **Capital Compliance**. After giving effect to the transactions contemplated by this Agreement, Independence One will be in compliance with the minimum regulatory capital requirements of the Office of Thrift Supervision (the "OTS") currently applicable to Independence One.

(i) **Independence One Ownership Structure**. As of the date hereof, all of the outstanding capital stock of Independence One is owned by MNC.

(j) **Tax Matters**.



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0054

(i) Independence One and MNC have supplied the Resolution Trust Corporation (the "RTC") or the FDIC Manager with all federal and state income tax returns (including amended returns) (the "Tax Returns") for Independence One or for the MNC Group which have been filed for the periods ended December 31, 1988, December 31, 1989, December 31, 1990, December 31, 1991, December 31, 1992, and December 31, 1993, and no adjustments have been proposed on IRS Form 4549 with respect to any tax benefit items.

(ii) Independence One is, and at all times during the term of the Assistance Agreement has been, a "domestic building and loan association" under the terms of Section 7701(a)(19) of the Code.

Section 7.2 <u>Representations and Warranties of the FDIC Manager</u>. To induce Independence One and MNC to enter into this Agreement and to consummate the transactions contemplated hereby, the FDIC Manager hereby makes the following representations and warranties to Independence One and MNC as of the date hereof, all of which shall survive the execution and delivery of this Agreement and the consummation of such transactions:

(a) <u>Power and Authorization</u>. The execution, delivery, and performance of this Agreement (i) are within the legal power and authority of the FDIC Manager, and (ii) have been duly authorized by all necessary action on the part of the FDIC Manager.

(b) <u>Binding Agreement</u>. This Agreement has been duly authorized, executed, and delivered by the FDIC Manager, and upon

the due authorization, execution, and delivery of this Agreement by Independence One and MNC, this Agreement shall be a legal, valid, and binding obligation of the FDIC Manager, enforceable against it in accordance with its terms except as such enforceability may be limited by (i) bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally, and (ii) general equitable principles (regardless of whether the issue of enforceability is considered in a proceeding in equity or at law).

**ARTICLE 8**
**COVENANTS**

Section 8.1 **Access to Books and Records.** Independence One and MNC shall cause to be made available to the FDIC Manager or its designee, at such reasonable times as the FDIC Manager may specify, all books, papers, records, and information of any kind relating to any or all matters subject to the Assistance Agreement, this Agreement, or both such Agreements, including any such materials or information in the possession or control of Independence One or MNC or any of their affiliates, subsidiaries, agents or counsel (including, but not limited to, tax returns and amended tax returns for any taxable years reasonably specified by the FDIC Manager or its designee that are pertinent to the matters concerned by this Agreement or the Assistance Agreement); provided, however, that neither Independence One nor MNC shall be required to make available to the FDIC Manager or its designee any information or documentation that is subject to the attorney-



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0056

client, work-product or any similar privilege, unless the cost of which was reimbursed to Independence One or MNC under the Assistance Agreement or this Agreement. Such materials shall be made available to the FDIC Manager or its designee at MNC's headquarters or such other location reasonably agreed to by Independence One or MNC.

Section 8.2 __Further Assurances__. Each of the parties hereto shall promptly and duly cause to be taken, executed, acknowledged or delivered all such further acts, conveyances, documents, and assurances as any party hereto may from time to time reasonably request in order more effectively to carry out the intent and purposes of this Agreement and the transactions contemplated hereby.

Section 8.3 __Costs and Expenses__. Except to the extent otherwise specifically provided herein, each party hereto agrees to pay all costs and expenses incurred by it in connection with or incidental to the matters contained in this Agreement, including any fees and disbursements of attorneys, accountants, and investment banking consultants.

8.4 __Section 13224 Claims__. If MNC and Independence One assert a claim or claims ("Claims") against a party other than the FDIC Manager for damages and for refunds of federal and state taxes and/or for the redetermination of liability for federal and state taxes for the taxable years 1989 and thereafter, and such Claims arise out of or relate to the enactment of Section 13224 of the Revenue Reconciliation Act of 1993 ("Section 13224") or



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0057

the application of Section 13224 to MNC, then the amount of damages or refunds sought in such Claims shall not include the amount that would have accrued to the benefit of the FDIC Manager under the Assistance Agreement or that would accrue to the benefit of the FDIC Manager under this Agreement. If MNC and Independence One receive any damages or refunds that include the amount that would have accrued to the benefit of the FDIC Manager under the Assistance Agreement or that would accrue to the benefit of the FDIC Manager under this Agreement, then MNC and Independence One shall pay such amount to the FDIC Manager no later than thirty (30) days following the date on which such damages or refunds were received. MNC and Independence One shall provide a copy of any Claims to the FDIC Manager within thirty (30) days of the assertion thereof.

Section 8.5 **Capital Maintenance Agreement**. The FDIC Manager agrees not to oppose any application or other proposal made by MNC to the OTS or any other regulatory agency to terminate, revise, or amend the Capital Maintenance Agreement dated December 31, 1988, by and between MNC, Independence One and the FSLIC.

Section 8.6 **Compliance with Section 2.5**. If Independence One or any of its subsidiaries leaves the MNC Group, MNC shall remain liable for any obligations Independence One may have under Section 2.5 to the FDIC Manager.

Section 8.7 **Debits to the SRA for Legal Fees**. Independence One agrees that it shall not debit the SRA after June 30, 1994,

for any legal fees and related costs, which fees and costs shall be the sole responsibility of Independence One.

**ARTICLE 9**
**RELEASE**

**Section 9.1** **Release by the FDIC Manager.** The FDIC Manager, on behalf of the FRF, hereby releases, acquits, and forever discharges, effective as of the date hereof, each of Independence One, MNC, and their subsidiaries, officers, directors, employees, and affiliates (and the respective successors, assigns, employees, agents, and representatives of all the foregoing) (collectively, the "Independence One Released Persons") from and against any and all actions and causes of action, suits, disputes, debts, accounts, promises, warranties, damages, claims, proceedings, demands, and liabilities, of every kind and character, direct and indirect, known and unknown, in law or in equity, that the FDIC Manager now has, has had at any time heretofore, or hereafter may have against the Independence One Released Persons by reason of any act or omission whatsoever by any Independence One Released Person in connection with the negotiation, administration, execution, or performance by any Independence One Released Person of the Assistance Agreement or any other agreements related thereto (and no other agreements to which the FDIC Manager is a party); provided, however, that the release provided in this Section 9.1 (i) is not intended to and shall not prevent any assertion of a claim with respect to any breach of this Agreement or any ancillary agreements or

instruments executed and delivered by the parties or any of them in connection with the execution of this Agreement or thereafter; (ii) shall not limit the right of the FDIC Manager to bring any claim based on fraud, willful and intentional misrepresentation of a material fact required to be disclosed under this Agreement, willful and intentional failure to disclose a material fact required to be disclosed under this Agreement, or willful and intentional misconduct; and (iii) shall not limit the rights of the FDIC Manager to pursue adjustments (other than adjustments relating to the Resolved Items) under Article 4 of this Agreement.

Section 9.2 <u>Release by Independence One and MNC</u>. Independence One and MNC hereby release, hold harmless, acquit, and forever discharge each of the FDIC Manager and the FRF and their officers, directors, and employees (and the respective successors, assigns, employees, agents, and representatives of all the foregoing) (collectively, the "FDIC Released Persons") from and against any and all actions and causes of action, suits, disputes, debts, accounts, promises, warranties, damages, claims, proceedings, demands, and liabilities, of every kind and character, direct and indirect, known and unknown, in law or in equity, that such Independence One Released Persons now have, have had at any time heretofore, or hereafter may have against the FDIC Released Persons by reason of any act or omission whatsoever by any FDIC Released Persons in connection with the negotiation, administration, execution, or performance by any of



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0060

the FDIC Released Persons of the Assistance Agreement or any other agreements related thereto; provided, however, that the release provided in this Section 9.2 (i) is not intended to and shall not prevent any assertion of a claim with respect to any breach of this Agreement or any ancillary agreements or instruments executed and delivered by the parties or any of them in connection with the execution of this Agreement or thereafter; (ii) shall not limit the rights of Independence One or MNC to bring any claim based on fraud, willful and intentional misrepresentation of a material fact required to be disclosed under this Agreement, willful and intentional failure to disclose a material fact required to be disclosed under this Agreement, or willful and intentional misconduct; and (iii) shall not limit the rights of Independence One or MNC under Article 4 of this Agreement. Nothing contained herein shall release or discharge or be construed to release or discharge in any way any claim (including without limitation any claim arising out of or relating to the enactment or application of Section 13224 of the Omnibus Budget Reconciliation Act of 1993) that Independence One or MNC may have against any other party including without limitation the United States of America or any agency or instrumentality thereof.

**Section 9.3 Rights to Enforce.** Notwithstanding the foregoing provisions of this Article 9, Independence One, MNC, and the FDIC Manager shall retain their respective rights to enforce this Agreement.

Section 9.4 __Termination of the Assistance Agreement__. Effective as of the close of business on September 30, 1994, except as expressly provided in Articles 2 and 10 hereof, the Assistance Agreement and the obligations and rights of the parties thereunder shall terminate and thereafter be of no further force or effect.

## ARTICLE 10
## INDEMNIFICATIONS

Section 10.1 __Indemnification by the FDIC Manager__.

(a) The FDIC Manager shall indemnify and hold harmless Independence One and MNC (and each of their respective officers, directors, employees, and affiliated persons) (collectively, the "Independence One Indemnitees") for sixty-three percent (63%) of the amounts actually incurred and paid by the Independence One Indemnitees in connection with the defense, prosecution, satisfaction, settlement, or compromise, including the reasonable costs and expenses of litigation (including reasonable attorneys' and accountants' fees, travel expenses, judgments, court costs, and related litigation expenses, and such other actual and reasonable costs as may be actually incurred and paid by the Independence One Indemnitees in connection with such defense, prosecution, satisfaction, settlement, or compromise); __provided, however__, that if such amounts are determined to be not deductible on a federal income tax return of any Independence One Indemnitee, the FDIC Manager shall indemnify such Independence One Indemnitee for one hundred percent (100%) of such amounts

(all of such amounts, costs, and expenses hereinafter referred to as the "Costs"), of (i) any claims relating to the Transferred Cases for which the FDIC Manager would have been required to indemnify the Independence One Indemnitees under the Assistance Agreement had such agreement not been terminated (including without limitation, the legal fees and expenses specified in Section 3.3 hereof); and (ii) any claim against any Independence One Indemnitee for which the FDIC Manager would have been required to indemnify the Independence One Indemnitees under the Assistance Agreement had such agreement not been terminated that arises from Environmental Losses (as such term is defined herein). For purposes of this Section 10.1(a), "Environmental Losses" shall mean any and all claims, damages, losses, expenses, costs, deficiencies, penalties, liens, interest, fines, assessments, charges, compensation, obligations and liabilities of any kind imposed or incurred by, or under or pursuant to Environmental Laws (as such term is defined herein), whether based on negligence, strict liability or otherwise, under any theory or process of recovery or relief, at law or in equity, including restoration, abatement. investigation, testing, monitoring, personal injury, death and property damage costs, and reasonable attorneys' fees, court costs, and interest paid or accrued, related to the contamination of a property or off-site locations arising from operations or activities on a property and the remediation thereof. For purposes of this Section 10.1(a), "Environmental Laws" shall mean any and all federal, state, or

local laws (including common law), rules, regulations, orders, ordinances, writs, judgments, injunctions, decrees, or determinations in effect during the period of this Agreement relating to the protection of the environment, the release of any hazardous substances into the environment, the generation, management, transportation, storage, treatment and disposal of hazardous substances, or the pollution of air, soil, groundwater or surface water (including, without limitation, the Clear Air Act, the Toxic Substance Control Act, the Clean Water Act, the Comprehensive Environmental Response, Compensation, and Liability Act, and the Resource Conservation and Recovery Act, all as amended).

(b) Independence One shall provide the FDIC Manager with prompt notice of any claim which may give rise to an indemnification hereunder and (i) cooperate with the FDIC Manager in connection with the defense of such claims, (ii) notify and provide the FDIC Manager with any summons, complaint, or other notice of lawsuit and any other documents directly related to such claims which the Independence One Indemnitees receive in connection with such claims within fifteen (15) days of receipt of such documents, and (iii) provide appropriate documentation of the expenses for which the Independence One Indemnitees request indemnification. The FDIC Manager may participate, at its own expense, in the defense of such claims. The FDIC Manager may assume the defense of such claims provided that the FDIC Manager indemnifies and holds harmless the Independence One Indemnitees



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0064

for any losses, costs, or expenses incurred by Independence One Indemnitees with respect to such assumed defenses (including any reasonable costs and expenses of litigation as specified in the first sentence of Section 10.1(a)) in connection with the FDIC Manager's defense, satisfaction, settlement, or compromise of such defense. The FDIC Manager shall have the right to monitor and direct the defense of any proceeding for which the FDIC Manager is obligated to indemnify such Independence One Indemnitees pursuant to the provisions of this Section 10.1, and the FDIC Manager shall have the right to direct such Independence One Indemnitees to appeal any determination of any trial court. The settlement or compromise of any claims against the Independence One Indemnitees for which the FDIC Manager is obligated to indemnify such Independence One Indemnitees pursuant to this Section 10.1 is subject to the prior written approval of the FDIC Manager.

(c) The indemnification provided in Section 10.1 hereof shall not apply to any Costs to the extent they are attributable to any of the following (the "Exclusion Events"):

(i) the generation, treatment, transportation, storage, use, installation or disposal by Independence One of any hazardous substances in or on any property;

(ii) the failure of Independence One to use reasonable efforts to protect a property against willful or wanton misconduct or grossly negligent acts or omissions of third parties that result in the release of hazardous substances

on a property to the extent such efforts are required by applicable state or federal law;

(iii) the failure of Independence One to comply in all material respects with applicable state and federal notification, disclosure and reporting requirements during the period of time that it held title to a property; or

(iv) any action or failure to act on the part of Independence One that is inconsistent with the management standard set forth in Section 16(a) of the Assistance Agreement.

**(d)** The indemnification by the FDIC Manager in Section 10.1(a) shall not be transferable except by operation of law, directly or indirectly, without the prior written consent of the FDIC Manager.

**(e)** The indemnification by the FDIC Manager in Section 10.1(a) shall expire at 11:59 p.m. Eastern Standard Time on December 31, 1998; provided, however, that for Costs incurred after such date, the indemnification shall continue for such Costs that are related to claims that are in litigation on such date, up to and including the date on which all such Costs are incurred and paid as provided in Section 10.1(f) hereof, and such litigation is finally resolved.

**(f)** The FDIC Manager shall pay the Independence One Indemnitees for any and all Costs for which such Independence One Indemnitees request indemnification within thirty (30) days after

the FDIC Manager has received all reasonably requested documentation of such Costs.

Section 10.2 <u>Indemnification by Independence One and MNC</u>. Independence One and MNC shall indemnify and hold harmless the FDIC Manager and the FRF (and each of their respective officers, directors, employees, and affiliated persons) (the "FDIC Indemnitees") for amounts actually incurred and paid by the FDIC Indemnitees in connection with the defense, prosecution, satisfaction, settlement, or compromise, including the reasonable costs and expenses of litigation (including reasonable attorneys' and accountants' fees, travel expenses, judgments, court costs, and related litigation expenses, and such other costs as may be incurred and paid by the FDIC Indemnitees in connection with such defense, prosecution, satisfaction, settlement, or compromise), of any claims relating to matters described in Sections 10.1(a)(i) and (ii) attributable to the Exclusion Events as defined in Section 10.1(c). The FDIC Indemnitees shall provide Independence One with prompt notice of any claim which may give rise to an indemnification hereunder and (i) cooperate with Independence One in connection with the defense of such claims, (ii) notify and provide Independence One with any summons, complaint, or other notice of lawsuit and any other documents directly related to such claims which the FDIC Indemnitees receive in connection with such claims, and (iii) provide appropriate documentation of the expenses for which the FDIC Indemnitees request indemnification. Independence One or MNC may

participate, at its own expense, in the defense of such claims. Independence One or MNC may assume the defense of such claims provided that Independence One or MNC indemnifies and holds harmless the FDIC Indemnitees for any losses, costs, or expenses incurred by the FDIC Indemnitees with respect to such assumed defenses (including any reasonable costs and expenses of litigation as specified in the first sentence of this Section 10.2) in connection with Independence One's or MNC's defense, satisfaction, settlement, or compromise of such defense. Independence One or MNC shall have the right to monitor and direct the defense of any proceeding for which Independence One and MNC are obligated to indemnify such FDIC Indemnitees pursuant to the provisions of this Section 10.2, and Independence One or MNC shall have the right to direct such FDIC Indemnitees to appeal any determination of any trial court. The settlement or compromise of any claims against FDIC Indemnitees for which Independence One and MNC are obligated to indemnify such FDIC Indemnitees pursuant to this Section 10.2 is subject to the prior written approval of Independence One or MNC.

## ARTICLE 11
## MISCELLANEOUS

**Section 11.1** **Amendments.** No amendment, modification, or waiver of any provision of this Agreement, nor any consent to any departure therefrom by any party, shall in any event be effective unless the same shall be embodied in a writing signed by all parties hereto, and then such waiver or consent shall be

effective only in the specific instance and for the specific purpose for which given.

**Section 11.2** **Notices**. Any notice, request, claim, demand, consent, approval, or other communication to any party hereto shall be deemed effective when received and shall be given in writing, and delivered in person against receipt therefor, or sent by certified mail, postage prepaid, to such party at its address set forth below (with copies as indicated below) or at such other address as such party shall hereafter furnish in writing to the other parties.

(a) If to Independence One or MNC:

Independence One Bank of California, FSB
c/o Michigan National Corporation
27777 Inkster Road
Farmington Hills, Michigan 48333-9065

Attn: Lawrence C. Gladchun, Esq.
General Counsel and Senior Vice President

With a copy to:

Ernest J. Antczak
Corporate Tax Director
Michigan National Corporation
27777 Inkster Road
Farmington Hills, Michigan 48333-9065



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0069

(b) If to the FDIC Manager:

Federal Deposit Insurance Corporation
Division of Resolutions
Assisted Acquisitions (FRF)
550 17th Street, N.W.
Washington, D.C. 20429

Attn: Assistant Director (FRF)

With copies to:

Federal Deposit Insurance Corporation
Legal Division
550 17th St., N.W.
Washington, D.C. 20429

Attn: Assistant General Counsel
(Resolutions)

and

Federal Deposit Insurance Corporation
Division of Resolutions
Assisted Acquisitions (FRF)
550 17th Street, N.W.
Washington, D.C. 20429

Attn: Chief, FRF Tax Unit

Section 11.3 Waiver. Except as otherwise provided herein, no failure or delay on the part of any party to this Agreement in exercising any right, privilege, power, or remedy under this Agreement, and no course of dealing among the parties hereto, shall operate as a waiver of such right, privilege, power, or remedy; nor shall any single or partial exercise of any right, privilege, power, or remedy under this Agreement preclude any other or further exercise of such right, privilege, power, or remedy. The rights, privileges, powers, and remedies available to the parties hereto are cumulative and not exclusive of any other rights, privileges, powers, or remedies provided by statute, at law, in equity, or otherwise. No notice to or demand

on any party in any case shall entitle such party to any other or further notice or demand in any similar or other circumstances or constitute a waiver of the right of the party giving such notice or making such demand to take any other or further action in any circumstances without notice or demand.

**Section 11.4** **Governing Law**. To the extent federal law does not control, this Agreement and the rights and obligations hereunder shall be governed by and construed in accordance with the laws of the State of Michigan without regard to principles of conflicts of laws thereof. Any legal action or proceedings with respect to this Agreement shall be brought in the federal courts of the United States of America located in the District of Columbia and each party hereto submits to the exclusive jurisdiction of such courts and hereby waives any objections on the grounds of venue, forum non conveniens, or any similar grounds.

**Section 11.5** **Severability**. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under all applicable laws. However, in the event that any provision of this Agreement shall be held to be prohibited or invalid under any applicable law, or declared unenforceable, then all of the remaining provisions of this Agreement shall, to the fullest extent possible, remain in full force and effect and shall be binding on the parties hereto; provided, however, that this Section 11.5 shall be of no force or effect if the exclusion of such provision or portion thereof



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0071

shall render the remaining provisions of this Agreement incapable of observance or shall cause this Agreement as a whole to fail of its essential purpose.

**Section 11.6** **<u>Successors and Assigns</u>.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and, except as otherwise provided in this Agreement, their respective successors and assigns; <u>provided</u>, <u>however</u>, that this Agreement may not be assigned (other than by operation of law) to any person or entity, nor may any rights or obligations under this Agreement be transferred or delegated to or vested in any other person or entity, without the prior written consent of the FDIC Manager. Accordingly, MNC and Independence One shall remain liable to the FDIC Manager for all obligations under this Agreement, including the obligation to make payments under Section 2.4 hereof, unless the FDIC Manager has provided its prior written consent to the release of such parties.

**Section 11.7** **<u>Headings; Article and Section References</u>.** The headings contained in this Agreement are for convenience only and shall not affect the construction of any provision of this Agreement. Unless otherwise specifically indicated, all Article and Section references contained herein are to Articles and Sections of this Agreement.

**Section 11.8** **<u>Exhibits</u>.** All Exhibits attached hereto are an integral part of and hereby incorporated into this Agreement.

**Section 11.9** **<u>Entire Agreement</u>.** This Agreement and the Exhibits hereto embody the entire agreement among the parties

hereto relating to the subject matters herein, and supersede all prior agreements and understandings among the parties, oral or written, relating to such matters.

Section 11.10 __Third-Party Beneficiaries__. Except as expressly provided in this Agreement, no provision of this Agreement is intended to benefit, nor shall it benefit, any person other than the parties hereto.

Section 11.11 __Execution in Counterparts__. This Agreement may be executed in separate counterparts, each of which when executed and delivered shall be deemed to be an original, and all of which taken together shall constitute one and the same Agreement.

Section 11.12 __Continuing Cooperation__. The parties hereto agree that they shall exercise their reasonable judgment and act in good faith in performing their duties and responsibilities under this Agreement and they shall also in good faith, and with their best efforts, cooperate with one another to carry out the purposes of this Agreement.

Section 11.13 __Joint and Several Liability of MNC and Independence One__. Any obligation of Independence One or MNC to the FDIC Manager under this Agreement shall be the obligation of each of them and each shall be jointly and severally liable to perform such obligation.

Section 11.14 __Late Payments__. In the event any payment due to any party under the terms of this Agreement is not made on or before the date specified by which such payment shall be made,



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0073

interest shall accrue on that payment (including any interest included therein) at the Late Payment Rate. The "Late Payment Rate" is the base (i.e., the prime) rate of CitiBank, N.A. in effect on the date such payment is due and thereafter adjusted on the first day of each calendar quarter; but in no event shall the Late Payment Rate exceed the maximum interest rate permitted by Michigan law to be charged among the parties hereto. Notwithstanding any other provision of this Agreement, any interest required pursuant to this Section 11.14 shall not be subject to any maximum payment restriction or cap.

**Section 11.15** **Duplicate Payments**. Any amount paid to any party under any provision of this Agreement or the Assistance Agreement shall not be paid to such party under any other provision of this Agreement, even though such payment may described in whole or in part in two or more such provisions.

**Section 11.16** **Wire Instructions**. Except where otherwise specifically provided herein, any payments pursuant to this Agreement among the parties hereto shall be made via wire transfer instructions to be provided by the payee to the payor at least three (3) business days prior to the due date of the payment.

**[SIGNATURE PAGE FOLLOWS]**



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0074

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers as of the day and year first above written.

INDEPENDENCE ONE BANK OF CALIFORNIA, FSB

By: [signature]
Name: Edward H. Sondker
Title: President

MICHIGAN NATIONAL CORPORATION

By: [signature]
Name: Lawrence L. Gladchun
Title: SVP, GC and Secretary

FEDERAL DEPOSIT INSURANCE CORPORATION, AS MANAGER OF THE FSLIC RESOLUTION FUND

By: ______
Name: ______
Title: ______

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers as of the day and year first above written.

INDEPENDENCE ONE BANK OF CALIFORNIA, FSB

By: ______________________
Name: ______________________
Title: ______________________

MICHIGAN NATIONAL CORPORATION

By: ______________________
Name: ______________________
Title: ______________________

FEDERAL DEPOSIT INSURANCE CORPORATION, AS MANAGER OF THE FSLIC RESOLUTION FUND

By: [signature]
Name: ROBERT H. HARTHEIMER
Title: ACTING DIRECTOR-DOR

Michigan
National
Corporation

Executive Offices 10-00
27777 Inkster Road
P. O. Box 9065
Farmington Hills, Michigan 48333-9065

(810) 473-3000 Main Switchboard
(810) 473-3101 Direct Dial
(810) 473-4340 Fax

Lawrence L. Gladchun
Senior Vice President
General Counsel
and Secretary

**Exhibit 1.2(c)**
**Form of Legal Opinion for Independence One and MNC**

September 29, 1994

Federal Deposit Insurance Corporation
as Manager of the FSLIC Resolution Fund
Division of Resolutions
Assisted Acquisitions (FRF)
555 17th Street, Northwest
Washington, D.C. 20429

Re: Termination Agreement by and among
Federal Deposit Insurance Corporation,
as Manager of the FSLIC Resolution Fund,
Michigan National Corporation, and
Independence One Bank of California, FSB,
Beverly Hills, California

Ladies and Gentlemen:

In the capacity as General Counsel of Michigan National Corporation, a savings and loan holding company incorporated under the laws of the State of Michigan ("MNC"), I have acted as counsel to MNC and Independence One Bank of California, FSB, a federally chartered stock savings bank wholly owned by MNC ("Independence One"), in connection with the execution and delivery by MNC and Independence One of the Termination Agreement by and among the Federal Deposit Insurance Corporation, as Manager of the FSLIC Resolution Fund (the "FDIC Manager"), MNC, and Independence One dated as of September 29, 1994 (the "Termination Agreement"). This opinion has been prepared at the request of the FDIC Manager and is being delivered to you pursuant to the provisions of Section 1.2(c) of the Termination Agreement. Capitalized terms not otherwise defined in this opinion shall have the meanings ascribed thereto in the Termination Agreement.

In connection with this opinion, I have examined originals or copies, certified or otherwise identified to my satisfaction, of executed counterparts of the Termination Agreement. In addition, I have reviewed such other documents and made such investigations as I deemed necessary as a basis for the opinions hereinafter expressed. In all such examinations, I have assumed the genuineness of all signatures on original and certified copies and the conformity to original or certified copies of all copies submitted to me as conformed or reproduction copies.

I further have assumed that (1) the FDIC Manager, as a party to the Termination Agreement, is duly organized and validly existing and has all necessary power and authority, and has all necessary governmental or other consents and authorizations, to enter into, execute, deliver, and perform the Termination Agreement and to effectuate the transactions required of it thereby; (2) the Termination Agreement has been duly executed and delivered by authorized agents or officials of the FDIC Manager acting within the scope of their respective authority in accordance with applicable law; (3) the Termination Agreement constitutes the enforceable obligation of the FDIC Manager; and (4) with respect to the Assistance Agreement by and among the Federal Savings and Loan Insurance Corporation (the "FSLIC"), Beverly Hills Federal Savings Bank, Beverly Hills, California, the predecessor of Independence One, and MNC dated as of December 31, 1988 (the "Assistance Agreement"), (a) the FSLIC had, from the date of the Assistance Agreement, and the FDIC Manager as successor to the FSLIC continues to have, all requisite power and authority to engage in the activities and transactions described in and contemplated by the Assistance Agreement; (b) the Assistance Agreement constituted the valid, binding and enforceable obligation of the FSLIC or its successors at all times from the date of its execution to the time of Closing of the Termination Agreement; and (c) the Assistance Agreement has continuously remained in full force and effect and will continuer to do so until the time of Closing of the Termination Agreement.

In addition, the opinions expressed in paragraphs 2, 5, and 6 below are subject to the effect of bankruptcy, insolvency, reorganization, or other similar law affecting creditors' rights generally, including judicially developed doctrines relevant to any of the foregoing laws, and to equitable principles, including those limiting the availability of specific performance, injunctive relief and other equitable remedies, regardless of whether considered in a proceeding in equity or at law.

Based upon and subject to the foregoing qualification, I am of the opinion that:

1. (a) Independence One is a Federally chartered stock savings bank duly organized, validly existing, and in good standing under the laws of the United States of America.

(b) MNC is a Michigan corporation duly organized, validly existing, and in good standing under the laws of the State of Michigan.

2. Each of Independence One and MNC has all requisite power and authority to (i) own and operate its properties and conduct its business as currently conducted by it, and (ii) engage in the activities and transactions described in and contemplated by the Termination Agreement.

3. The execution and delivery by Independence One and MNC, respectively, of the Termination Agreement and the consummation of the transactions required thereby have been duly approved by all necessary corporate action of Independence One and MNC, respectively.

4. All governmental approvals and other third-party consents that are required in connection with the execution, delivery, or performance by Independence One and MNC of the Termination Agreement or the consummation by Independence One or MNC of the transactions contemplated thereby have been obtained.

5. The execution, delivery, and performance by Independence One and MNC of the Termination Agreement will not materially violate or conflict with any provision of applicable law or regulation, or any order, writ, judgment or decree of any court or governmental authority to which Independence One or MNC is otherwise subject.

6. The execution, delivery, and performance by Independence One and MNC of the Termination Agreement will not (i) materially violate or conflict with any provision of the respective articles of association or organization or bylaws of Independence One or MNC, or (ii) result in a material violation or breach of, or default under, any contract, lease, or other instrument to which Independence One or MNC is a party.

7. There is no legal action, suit, investigation, or proceeding pending or threatened against or affecting Independence One or MNC or any of their respective subsidiaries which questions the validity of the Termination Agreement or any of the transactions contemplated thereby, or which would be reasonably expected to have a material adverse effect on the ability of Independence One or MNC to perform, satisfy, or observe any obligation or condition of the Termination Agreement.

The opinions expressed herein are limited to matters governed by the internal laws of the State of Michigan and the federal laws of the United States of America s in effect on the date hereof, and I express no opinion as to the law of any other state or jurisdiction.

This opinion is limited to the matters stated herein and no opinions may be implied or inferred beyond the opinions expressly stated herein. This opinion may only be relied upon by the FDIC Manager specifically with respect to the transactions as to which these opinions relate and may not be quoted in whole or in part or otherwise referred to for any other purpose, except in connection with the inspection of your files by governmental examiners or auditors.

Sincerely,

Lawrence L. Gladchun
Senior Vice President, General
Counsel and Secretary
Michigan National Corporation

FDIC
Federal Deposit Insurance Corporation
Washington, D.C. 20429
Legal Division

**Exhibit 1.3(c)**
**Form of Legal Opinion for FDIC**

September 29, 1994

Independence One Bank of California, FSB
c/o Michigan National Corporation
27777 Inkster Road
Farmington Hills, Michigan 48333-9065

Michigan National Corporation
27777 Inkster Road
Farmington Hills, Michigan 48333-9065

Re: Termination Agreement by and among Federal Deposit Insurance Corporation, as Manager of the FSLIC Resolution Fund, Michigan National Corporation, and Independence One Bank of California, FSB

Ladies and Gentlemen:

In the capacity as Senior Counsel (Resolutions) of the Federal Deposit Insurance Corporation (the "FDIC"), I have acted as counsel to the FDIC in connection with the execution and delivery by the FDIC as Manager of the FSLIC Resolution Fund (the "FDIC Manager") of the Termination Agreement by and among the FDIC Manager, Michigan National Corporation ("MNC"), and Independence One Bank of California, FSB, Mission Viejo, California (formerly named Beverly Hills Federal Savings Bank, Beverly Hills, California) ("Independence One") dated as of September 29, 1994 (the "Termination Agreement"). This opinion has been prepared at the requests of Independence One and MNC and is being delivered to you pursuant to the provisions of Section 1.3(c) of the Termination Agreement. Capitalized terms not otherwise defined in this opinion shall have the meanings ascribed thereto in the Termination Agreement.

In connection with this opinion, I have examined originals or copies, certified or otherwise identified to my satisfaction, of executed counterparts of the Termination Agreement. In addition, I have reviewed such other documents and made such investigations as I deemed necessary as a basis for the opinions hereinafter expressed. In all such examinations, I have assumed the genuineness of all signatures on original and certified copies and the conformity to original or certified copies of all copies submitted to me as conformed or reproduction copies.

I further have assumed that (1) each of MNC and Independence One, as a party to the Termination Agreement, is duly organized and validly existing and has all necessary power and authority, and has all necessary governmental or other consents and authorizations, to enter into, execute, deliver, and perform the Termination Agreement and to effectuate the transactions required of it thereby; (2) the Termination Agreement has been duly executed and delivered by authorized agents or officials of each of MNC and Independence One acting within the scope of their respective authority in accordance with applicable law; and (3) the Termination Agreement constitutes the enforceable obligation of each of MNC and Independence One.

I also further have assumed that with respect to the Assistance Agreement by and among the former Federal Savings and Loan Insurance Corporation, Independence One, and MNC dated as of December 31, 1988 (the "Assistance Agreement"), (1) each of Independence One and MNC had, and continues to have, from the date of the Assistance Agreement, all requisite power and authority to engage in the activities and transactions described in and contemplated by the Assistance Agreement; (2) the Assistance Agreement constituted the valid, binding and enforceable obligation of each of Independence One and MNC at all times from the date of its execution to the time of execution of the Termination Agreement; and (3) the Assistance Agreement has continuously remained in full force and effect and will continue to do so until the time of execution of the Termination Agreement.

In addition, the opinion expressed in paragraph 2 is subject to the effect of bankruptcy, insolvency, reorganization, or other similar laws affecting creditors' rights generally, including judicially developed doctrines relevant to any of the foregoing laws, and to equitable principles, including those limiting the availability of specific performance, injunctive relief and other equitable remedies, regardless of whether considered in a proceeding in equity or at law.

Based upon and subject to the foregoing qualification, I am of the opinion that:

1. The execution, delivery, and performance of the Termination Agreement (a) are within the legal power and authority of the FDIC Manager, and (b) have been duly authorized by all necessary action on the part of the FDIC Manager.

2. The Termination Agreement has been duly authorized, executed, and delivered by the FDIC Manager, and upon the due authorization, execution, and delivery of the Termination Agreement by Independence One and MNC, the Termination Agreement will be a legal, valid, and binding



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0082

obligation of the FDIC Manager, enforceable against it in accordance with its terms.

The opinions expressed herein are limited to matters governed by the federal laws of the United States of America administered by the FDIC in effect on the date hereof. No opinions may be implied or inferred beyond the opinions expressly stated herein. This opinion may only be relied upon by each of Independence One and MNC specifically with respect to the transactions as to which these opinions relate and may not be quoted in whole or in part or otherwise referred to for any other purpose.

Sincerely,

Leslie R. Crawford
Senior Counsel (Resolutions)



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FMI001 0083

**EXHIBIT 2.3**
**RESOLVED ITEMS**

A. **SRA -- CLOSED AUDITS**

All matters relating in any way to the SRA for any period ending on or prior to September 30, 1992, are Resolved Items, and no further payments are or shall be due to or from the FDIC Manager, MNC or Independence One pursuant to the Assistance Agreement or the Termination Agreement for any such period.

B. **SRA -- Open Audits**

All matters set forth in paragraphs 1 through 6 below are Resolved Items, and no further payments are or shall be due to or from the FDIC Manager, MNC or Independence One pursuant to the Assistance Agreement or the Termination Agreement with respect to any such items:

1. For taxable years ending prior to January 1, 1994, the tax attributes (as previously reported on tax returns for such years) of the subsidiaries of Independence One shall not constitute Tax Benefit Items; the preceding applies to all tax attributes of Independence One's subsidiaries, including, but not limited to, net operating loss carryforwards, tax credit carryovers, and any tax deductions or losses related to the so-called VMS loans, the 59th Street Joint Venture and the Stamford Partnership;

2. Any bad debt deduction taken by Independence One in excess of deductions for bad debts that

would have been allowed under the specific charge-off method shall not constitute a Tax Benefit Item;

3. The credit to the SRA for taxable year 1991 under Section 3(b)(5) of the Assistance Agreement shall be deemed to be $842,250.00 greater than the amount actually credited to the SRA for taxable year 1991 under Section 3(b)(5), which amount is allocable to the following adjustments:

| | | |
|---|---|---|
| (a) | Increase in Covered Asset Losses | |
| | Federal Net Tax Benefits | $ 78,581.00 |
| | State Net Tax Benefits | 16,141.00 |
| (b) | AMT Credit Carryover (Indemnification Net Tax Benefits) | 747,528.00 |
| | | $842,250.00; |

4. The so-called "Murdock/Sepulveda Settlement" payment shall be treated as assistance under Section 3(a)(1) of the Assistance Agreement;

5. The so-called "Southmark" recovery of $3,635,763 is a Tax Detriment Item for 1992 to the extent of $1,817,882;

6. The debit to the SRA under Section 3(a)(2) for legal expenses for the quarter ending September 30, 1994 shall be zero; and

7. For taxable years ending prior to January 1, 1994, Independence One shall not be entitled to any additional Guaranteed Yield on assets that were subject to approved writedowns during such years.

For purposes of this Exhibit 2.3, the following terms shall have the meanings assigned thereto in the Assistance Agreement: Tax Benefit Item, Covered Asset Losses, Federal Net Tax Benefits, State Net Tax Benefits, Guaranteed Yield, Indemnification Net Tax Benefits, and Tax Detriment Item.

EXHIBIT 3.1

A. DEFENSE LITIGATION

| CASE NAME: | COURT AND CASE NO.: | COUNSEL NAME, ADDRESS AND TELEPHONE NUMBER | TYPE OF CASE | STAGE OF PROCEEDINGS |
|---|---|---|---|---|
| Western Security Bank v. BHBB, et al. (Vista Place) ** Cross-Complaint | California Court of Appeal 2nd Appellate District<br>Case No. BC031239 | Steven J. Cote<br>Saxon, Dean, Mason, Brewer & Kincannon<br>333 City Blvd. West, Suite 1600<br>Orange, CA 92668-2924 | Breach of Contract | Court of Appeal upheld trial court's opinion which was adverse to BHBB - Supreme Court to review |
| Doris J.B. Smith v. BHS&L | Los Angeles Superior Court<br>Case No. BC101475 | Michelle Ahrens<br>Tredway, Brandmeyer & Lumsdaine<br>10841 Paramount Blvd.<br>Downey, CA 90241-3397 | Quiet Title and Damages | Demurrer to be filed |
| City of Escondido v. Sanesco Oil et al. | U.S. District Court, Southern District CA<br>Case No. 93-0181-K (POR) | R. Keith McKellogg<br>Circuit, McKellogg, Kinney & Ross<br>Torrey Financial Building<br>1205 Prospect Street, #400<br>La Jolla, CA 92037 | Hazardous Waste | Second Amended Complaint naming BHS filed June 1994. Conference for all parties to be held in July 1994 |
| RMF Enterprises, Inc., Irving Rosner, Sylvia Rosner v. XIAO-Dan Hu, BH Savings & Loan Association | Superior Court of California, Los Angeles County<br>Case No. BC028880 | Michele S. Ahrens<br>Tredway, Brandmeyer, Brazelton & Lumsdaine<br>10841 Paramount Blvd.<br>Downey, California 90241<br>(714) 750-0141<br>(213) 923-0971 | Partition of Real Property | BHBB interest limited to security interest. Stipulation executed that BHBB not participate |
| Santa Ana Unified School District v. Gorgonio Morfin, et al. | Superior Court of California<br>Orange County<br>Case No. 60 83 16 | No counsel needed | Complaint in Eminent Domain | BHFSB filed a No Interest Declaration |
| Tredway v. BHS, et al. | Superior Court of California<br>Los Angeles County<br>Case No. WEC 79839 | Michele S. Ahrens<br>Tredway, Brandmeyer, Brazelton & Lumsdaine<br>10841 Paramount Blvd.<br>Downey, California 90241<br>(714) 750-0141<br>(213) 923-0971 | Breach of Contract/Negligent Infliction of Emotional Distress | Off Civil Calendar pending arbitration/Inactive |

B. AFFIRMATIVE LITIGATION

| CASE NAME: | COURT AND CASE NO.: | COUNSEL NAME, ADDRESS AND TELEPHONE NUMBER | TYPE OF CASE | STAGE OF PROCEEDINGS |
|---|---|---|---|---|
| BHS v. Michael Harlan Rosenberg<br>** Cross-Complaint | U.S. District Court<br>Central District of California<br>Case No. 90-1437-CBM (JRX) | Eric Laudiere<br>Stroock & Stroock & Lavan<br>2029 Century Park East<br>St. 1800<br>Los Angeles, CA 90067<br>(213) 553-5800 | **Breach of Guaranty/Damages | Not pursuing |



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER L FMI001 0088