# FDIC's Response to MNC's June 17, 1994 Proposal to Terminate the Assistance Agreement

## Promissory Note

η The Promissory Note may be paid in full by the FDIC on or after the close of business on September 30, 1994.

## Assistance Agreement Termination

η

- Except as provided for herein, the Assistance Agreement will be terminated on the close of business on September 30, 1994. Thereafter, Independence One Bank of California, FSB (IOBC) will not be entitled to receive any further assistance from the FDIC (including its right to receive Deposit Spread Amounts) and the FDIC will not be entitled to any future payments from MNC and/or IOBC (including it rights under Section 32 of the Assistance Agreement).

  η The FDIC will receive its share of the tax benefits from the $25.8 million NOL carryback of the 1989 and 1990 losses to 1986 and 1987. In addition, the FDIC will receive its share of any interest paid from the IRS on this refund. Further, should the IRS not refund the carryback until after 12/31/94 the FDIC's share will be 50% rather than 25%. In the event that the NOL is not allowed to be carried back, then the $25.8 million NOL would need to be added to the post-1993 tax benefits.

- With respect to tax sharing, the provisions of Section 9 will not apply to, and the FDIC shall surrender its right to receive tax sharing payments for, any taxable years beginning after December 31, 1993.

  The FDIC agrees not to share in any post-1993 tax benefits except as otherwise noted in this proposal. However, Michigan National agrees not to amend any prior year tax returns in a manner which pushes tax benefits from prior to 1994 to after 1993.

- η The FDIC shall be entitled to a credit to the Special Reserve Account (SRA) on September 30, 1994 for an amount equal to the sum of (A) 35.0% of the debits made to the SRA during 1994 under Section 3(a)(2) *and Section 3(a)(3)* of the Assistance Agreement, and (B) 8.750% of the sum of (i) the interest earned on the Promissory Note for the period from January 1, 1994 to September 30, 1994, and (ii) the debits made to the SRA during 1994 *other than Sections 3(a)(2) and 3(a)(3)* less credits made to the SRA under Section 3(b)(1) of the Assistance Agreement.

PLAINTIFF'S EXHIBIT 10
PENGAD 800-631-6989

MNB047_C127

*WC- Internal Use Only*

- The pre-acquisition NOL carryforward of IOBC and its subsidiaries as of December 31, 1993 will be ***shared at*** a 50% rate.

  In addition, the sharing will include any pre-acquisition tax credits. The FDIC retains its rights to share in the NOLs and credits of both the subsidiary and thrift if there is a disposition.

- All outstanding unresolved claims under the Assistance Agreement or the Promissory Note, including MNC's claim for compensation due for early prepayment of note principal and the FDIC's claim regarding subsidiary tax benefits, will be waived by both parties.

- The FDIC shall have the right to review MNC's tax sharing computations for calendar years 1991 through 1993. For purposes of the bad debt reserve, the FDIC reserves the right to audit and receive tax benefit payments for additions to the bad debt reserve in excess of charge-offs for the years 1989 through 1993 if IOBC is not sold by December 31, 1994. The FDIC will remit to IOBC the tax benefits previously paid to the FDIC on such excess upon the recapture or absorption of the reserve.

- MNC/IOBC retains no rights against the FDIC with respect to the Section 13224 of the Revenue Reconciliation Bill of 1993.

<u>Survival of Certain Provisions</u>

- The provisions of Section 9(j) and 9(l) will survive the termination of the Assistance Agreement.

  In addition, Sections 9(d) and 9(e) will survive the termination of the Assistance Agreement with regard to computing tax benefits related to the pre-acquisition NOLs and tax credits. In the event IOBC is not disposed of by December 31, 1994, Sections 9(d) and 9(e) survive for purposes of computing tax benefits associated with the bad debt reserve.

- With the respect to any future payments, if any, made to IOBC pursuant to Sections 9(j) or 9(l), such payment will be 63% of the amount otherwise required to be paid by the FDIC.

- For all purposes, including for purposes of Sections 9(j) and 9(l), MNC/IOBC shall be treated as having paid the FDIC 25% of the Net Tax Benefits for 1994 and 50% of Net Tax Benefits paid after 1994 associated with MNC's December 31, 1993 NOL and AMT Credit carryforwards. In no event shall the Net Tax Benefits reimbursable to MNC/IOBC pursuant to Section 9(j) exceed $13.4 million.

- To the extent that MNC/IOBC is required to pay the Federal Government any additional Alternative Minimum Tax (AMT) for any taxable years beginning after 1988 (and provided the federal tax laws allow such AMT tax to be creditable against future regular federal income tax liability), MNC/IOBC agrees that its right to an indemnification payment for the FDIC's share of the AMT Tax under Section 9(j) is waived. Notwithstanding this waiver, MNC/IOBC shall be entitled to receive any interest and/or penalty indemnification payment it has a right to under the provisions of Section 9(j) as well as other expense indemnification payment under Section 9(l) which result from any additional AMT liability it may incur.

  The FDIC requires verification (in the form of an IRS Closing Agreement or Revenue Agent's Report) MNC lost the AMT issue fully. In the event that the IRS compromises this issue, the FDIC shall be entitled to a refund of its ratable share of the AMT Credit issue which was not disallowed.

<u>Cash Payment</u>

Cash payments will be made for: (1) the outstanding Promissory Note balance plus accrued interest, (2) the normal settlement of the third quarter SRA balance (including the tax benefit for 1994 SRA and interest payments), and (3) tax sharing payment for 1993. An additional cash payment to the FDIC of $8.6 million is contemplated by this proposal.