DRAFT
September ~~1~~ 8, 1994

THIS DRAFT IS SUBJECT TO FURTHER REVIEW AND REVISION BY THE FDIC

# TERMINATION AGREEMENT

BY AND AMONG

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS MANAGER OF THE
FSLIC RESOLUTION FUND,

MICHIGAN NATIONAL CORPORATION

AND

INDEPENDENCE ONE BANK OF CALIFORNIA, FSB
BEVERLY HILLS, CALIFORNIA

DATED AS OF SEPTEMBER 30, 1994

PENGAD 800-631-6989 PLAINTIFF'S EXHIBIT 13

MNBA&P001_0270

MNB100_00269
Damages Phase
CONFIDENTIAL

TABLE OF CONTENTS


page

RECITALS . . . . . . . . . . . . . . . . . . . . . . . . . . .

AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . .

ARTICLE I CLOSING . . . . . . . . . . . . . . . . . . . . .

ARTICLE II PAYMENTS AND TRANSFERS . . . . . . . . . . . . . .

Section 2.1 Payment of Termination Amount . . . . . . . . .
Section 2.2 Disputes . . . . . . . . . . . . . . . . . . . .
Section 2.3 Termination of Assistance Agreement; Surviving Provisions . . . . . . . . . . . . . . . . . . . .
Section 2.4 Tax Matters . . . . . . . . . . . . . . . . . . .

(a) 1989-1993 Tax Benefits . . . . . . . . . . . . . .
(b) 1994 Tax Benefits . . . . . . . . . . . . . . . .
(c) Change of Accounting Method for Reserve for Bad Debts . . . . . . . . . . . . . . . . . . .
(d) SRLY NOL Carryforwards and SRLY Tax Credits . . . . . . . . . . . . . . . . . . . .
(e) Payment of SRLY NOL and Credit Benefits . . . . . . . . . . . . . . . . . . . .
(f) SRLY AMT NOLs . . . . . . . . . . . . . . . . . .
(g) Audit Adjustments . . . . . . . . . . . . . . . .
(h) Documentation . . . . . . . . . . . . . . . . . .
(i) Amended Returns . . . . . . . . . . . . . . . . .
(j) State Tax . . . . . . . . . . . . . . . . . . . .
(k) Tax Benefit Audit . . . . . . . . . . . . . . . .

ARTICLE III TRANSFER OF LITIGATION . . . . . . . . . . . . .

Section 3.1 Transferred Cases. . . . . . . . . . . . . . . .

ARTICLE IV POST-CLOSING AUDIT . . . . . . . . . . . . . . . .

Section 4.1 Generally . . . . . . . . . . . . . . . . . . .
Section 4.2 Final Payment . . . . . . . . . . . . . . . . .
Section 4.3 Post-Closing Audit Procedures. . . . . . . . . .

ARTICLE V DISPUTE RESOLUTION . . . . . . . . . . . . . . . .

Section 5.1 Disputes . . . . . . . . . . . . . . . . . . . .
Section 5.2 Review Board . . . . . . . . . . . . . . . . . .

Article VI CONDITIONS PRECEDENT TO CLOSING . . . . . . .

Section 6.1 Conditions to Obligations of the FDIC Manager . . . . . . . . . . . . . . . . . . . . . . .

(a) Certified Resolutions . . . . . . . . . . . . .


MNBA&P001_0271

MNB100_00270
Damages Phase
CONFIDENTIAL

(b) Incumbency Certificates . . . . . . . . . . .
(c) Legal Opinions . . . . . . . . . . . . . . .
(d) Proceedings . . . . . . . . . . . . . . . .
(e) Consents and Approvals . . . . . . . . . .
(f) Accuracy of Representations and Warranties; Performance . . . . . . . . . . .
(g) Financial Condition . . . . . . . . . . . . .

Section 6.2 Conditions to Obligations of Independence One and MNC . . . . . . . . . . . . . . . . .

(a) Accuracy of Representations and Warranties; Performance . . . . . . . . . . .
(b) Proceedings . . . . . . . . . . . . . . . .

Section 6.3 Conditions to Obligations of the FDIC Manager, Independence One and MNC . . . . . . . . .

(a) OTS Approval . . . . . . . . . . . . . . . .
(b) Closing Date . . . . . . . . . . . . . . . .

ARTICLE VII REPRESENTATIONS AND WARRANTIES . . . . . . . . .

Section 7.1 Representations and Warranties of Independence One and MNC . . . . . . . . . . . . . . .

(a) Corporate Existence . . . . . . . . . . . .
(b) Due Authorization . . . . . . . . . . . . .
(c) Binding Agreement . . . . . . . . . . . . .
(d) Compliance with Law . . . . . . . . . . . .
(e) Compliance with Obligations . . . . . . . .
(f) Approvals and Consents . . . . . . . . . .
(g) Litigation . . . . . . . . . . . . . . . . .
(h) Capital Compliance . . . . . . . . . . . . .
(i) Accuracy of Information . . . . . . . . . .
(j) Independence One Ownership Structure . . . .
(k) Tax Matters . . . . . . . . . . . . . . . .
(l) Environmental . . . . . . . . . . . . . . .

Section 7.2 Representations and Warranties of the FDIC Manager . . . . . . . . . . . . . . . . . .

(a) Power and Authorization . . . . . . . . . .
(b) Binding Agreement . . . . . . . . . . . . .

ARTICLE VIII COVENANTS . . . . . . . . . . . . . . . . . .

Section 8.1 Access to Books and Records . . . . . . .
Section 8.2 Further Assurances . . . . . . . . . . .
Section 8.3 Costs and Expenses . . . . . . . . . . .
Section 8.4 FDIC's OIG Matters . . . . . . . . . . .

(a) Maintenance of Records . . . . . . . . . . . . . .
(b) OIG Access to Books and Records. . . . . . .
(c) OIG Audits and Examinations. . . . . . . . .
(d) Other Rights . . . . . . . . . . . . . . . . . .

Section 8.5 Tax Matters . . . . . . . . . . . . . . . . . .

ARTICLE IX RELEASE . . . . . . . . . . . . . . . . . . . . .

Section 9.1 Release by the FDIC Manager . . . . . . . .
Section 9.2 Release by Independence One and MNC . . .
Section 9.3 Accord and Satisfaction . . . . . . . . . . .
Section 9.4 Rights to Enforce . . . . . . . . . . . . . .

ARTICLE X INDEMNIFICATIONS . . . . . . . . . . . . . . . .

Section 10.1 Indemnification by the FDIC Manager
Section 10.2 Indemnification by Independence One and MNC . . . . . . . . . . . . . . . . . . . . . . .

ARTICLE XI MISCELLANEOUS . . . . . . . . . . . . . . . . .

Section 11.1 Amendments . . . . . . . . . . . . . . . . .
Section 11.2 Notices . . . . . . . . . . . . . . . . . . .
Section 11.3 Waiver . . . . . . . . . . . . . . . . . . .
Section 11.4 Governing Law . . . . . . . . . . . . . . .
Section 11.5 Severability . . . . . . . . . . . . . . . .
Section 11.6 Successors and Assigns . . . . . . . . . .
Section 11.7 Headings . . . . . . . . . . . . . . . . . .
Section 11.8 Exhibits . . . . . . . . . . . . . . . . . .
Section 11.9 Entire Agreement . . . . . . . . . . . . . .
Section 11.10 Third-Party Beneficiaries . . . . . . . . .
Section 11.11 Execution in Counterparts . . . . . . . . .
Section 11.12 Continuing Cooperation . . . . . . . . . .
Section 11.13 Joint and Several Liability of MNC and Independence One . . . . . . . . . . . . . . . .
Section 11.14 Nature of Payments . . . . . . . . . . . .


EXHIBITS


2.2 Resolution of Outstanding Issues Under Assistance Agreement . . . . . . . . . . . . . .
2.4(a)(ii) 1991 Net Tax Benefits Calculation . . . . . . .
2.4(a)(iii) 1992 Net Tax Benefits Calculation . . . . . . .
2.4(a)(iv) 1993 Net Tax Benefits Calculation . . . . . . .
2.4(f)(iv) Illustration of Calculation of Net Payment SRLY AMT NOLS . . . . . . . . . . . . . . . .
3.1(a) [Transferred Cases][1] . . . . . . . . . . . . . .


[1] This Exhibit will list the affirmative matters and any other litigation the FDIC wants to manage.



MNBA&P001_0273

MNB100_00272
Damages Phase
CONFIDENTIAL

| | |
|---|---|
| 6.1(c)(i) | Form of Legal Opinion for Independence One . . . . . . . . . . . . . . . . . . . . . |
| 6.1(c)(ii) | Form of Legal Opinion for MNC . . . . . . . . |
| 6.1(f) | Certificate of Independence One and MNC as to Accuracy of Representations and Warranties and Performance . . . . . . . . . . . . . . . . . . . . |
| 7.1(k) | Tax Matters . . . . . . . . . . . . . . . . . . . . . |
| 7.1(l) | Environmental Matters . . . . . . . . . . . . . . . . |
| 10.1(a) | [Covered Cases][2] . . . . . . . . . . . . . . . . . . . |


[2] This Exhibit will include the defensive litigation and any other matters the FDIC doesn't want to manage.

Draft of September 1 8, 1994

**TERMINATION AGREEMENT**

This TERMINATION AGREEMENT (which together with all Exhibits attached hereto is collectively called the "Agreement"), dated as of September 30, 1994, is entered into by and among the Federal Deposit Insurance Corporation (the "FDIC") as Manager of the FSLIC Resolution Fund (the "FRF") (the FDIC as Manager of the FRF is herein called the "FDIC Manager"), Michigan National Corporation, a savings and loan holding company incorporated under the laws of the State of Michigan ("MNC"), and Independence One Bank of California, FSB, Beverly Hills, California, a federally-chartered stock savings bank wholly owned by MNC ("Independence One").

**RECITALS**

The FRF is the transferee of the assets and liabilities of the Federal Savings and Loan Insurance Corporation (the "FSLIC"). The FDIC Manager, Independence One, as successor to Beverly Hills Federal Savings Bank, Beverly Hills, California ("Beverly Hills"), and MNC desire to provide for (i) the early termination of that certain Assistance Agreement dated December 31, 1988, by and among the FSLIC, Beverly Hills, and MNC (the "Assistance Agreement"), (ii) the settlement of certain disputes under the Assistance Agreement, and (iii) the prepayment of the Replacement Promissory Note dated July 1, 1990 made by the FDIC Manager (the "Note") in the principal amount of Eight Hundred Eleven Million,

MNBA&P001_0275

MNB100_00274
Damages Phase
CONFIDENTIAL

Four Hundred Sixty-Five Thousand, Five Hundred Sixty-Eight Dollars ($811,465,568).

Capitalized terms not otherwise defined herein shall have the meanings given such terms in the Assistance Agreement.

**AGREEMENT**

In consideration of the mutual promises and covenants contained herein, and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and, notwithstanding anything to the contrary in the Assistance Agreement and any other related agreements, the parties hereby agree as follows:

**ARTICLE I**
**CLOSING**

The consummation of the transactions contemplated by this Agreement, subject to the satisfaction or waiver in writing of the conditions precedent set forth in Article VI, shall take place at a closing (the "Closing") to be held at the offices of the FDIC Manager, 550 17th Street, N.W., Washington, D.C., at 11:00 a.m. Eastern Standard Time on September 30, 1994, or such earlier or later date, or in such other manner, as the parties hereto may agree in writing (the "Closing Date").

ARTICLE II
PAYMENTS AND TRANSFERS

Subject to the satisfaction or waiver in writing of the conditions precedent set forth in Article VI hereof, the parties hereto agree as follows:

Section 2.1 Payment of Termination Amount. [Within two (2) business days following ] the Closing Date, the FDIC Manager shall pay or cause to be paid to Independence One, by wire transfer in immediately available funds, [ Dollars ($____________)] (the "Termination Amount"). The Termination Amount ~~was~~ has been determined by subtracting from [Three Hundred Forty-Eight Million, Nine Hundred Thousand Dollars ($348,900,000)], which is the amount payable by the FDIC to Independence One under the Note (equal to the outstanding principal and interest accrued on the Note as of the Closing Date~~, less~~), the sum of (i) Seven Million Dollars ($7,000,000)~~, which is a cash amount payable by Independence One to the FDIC Manager under this Agreement,~~ and (ii) [ Dollars ($____________)], which is ~~an amount payable by Independence One to the FDIC Manager~~ equal to the sum of the amounts determined pursuant to Section 2.4(a)(ii)-(iv), (b)(i), and (f)(ii) below, net of the amount specified in Section 2.4(f)(i) below.

Section 2.2 Disputes. Exhibit 2.2 attached hereto contains the definitive agreement among the parties hereto regarding resolution of the issues set forth therein; any and all payments



MNBA&P001_0277

MNB100_00276
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0276

due between them with respect to such issues have been encompassed in the Termination Amount.

Section 2.3 Termination of Assistance Agreement; Surviving Provisions. Except as otherwise provided herein, upon completion of the Closing, the Assistance Agreement and all rights and obligations of the parties thereto shall terminate effective as of the Closing Date. Section 7 of the Assistance Agreement shall survive the termination of the Assistance Agreement as provided in Article X herein.

Section 2.4 Tax Matters.

(a) 1989-1993 Tax Benefits. Pursuant to the obligation of Independence One to credit the Special Reserve Account (the "SRA") or make payments to the FDIC Manager pursuant to Section 9 of the Assistance Agreement for Net Tax Benefits, the amounts set forth in ~~paragraphs~~ Section 2.4(a)(i) through (iv) below are included, for the taxable years from 1989~~,~~ through and including 1993, as credits to the benefit of the FDIC Manager in the calculation of the Termination Amount as set forth in Section 2.1 above.

(i) 1989-1990. Except for the amounts provided in ~~subsection (b) of this~~ Section 2.4(b) , the parties hereto have taken into account the Net Tax Benefits due to the FDIC Manager , for the taxable years from and including 1989~~,~~ through ~~and including~~ 1990, in the Seven Million Dollar ($7,000,000) credit to the benefit of the FDIC Manager that



MNBA&P001_0278

MNB100_00277
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0277

including 1989~~,~~ through ~~and including~~ 1991, and carried back to prior years. Not later than thirty (30) days after the constructive receipt of each such refund, MNC and Independence One shall pay to the FDIC Manager an amount equal to twenty-five percent (25%) of such refund ~~and~~ plus interest received from the Internal Revenue Service (the "IRS").

(vi) Clarifications. In calculating the Net Tax Benefits due to the FDIC Manager in each of the taxable years from and including 1989~~,~~ through ~~and including~~ 1993, the parties hereto agree that the provisions of Section 9 of the Assistance Agreement are to be interpreted in such years with the following clarifications:

(A) For purposes of Section 9(c) of the Assistance Agreement, any tax attributes of subsidiaries of Independence One, and any adjustment to the reserve for bad debts of Independence One in excess of the amount actually charged to the reserve in such year, are not Tax Benefit Items;

(B) For purposes of Sections 9(d) and (e) of the Assistance Agreement, fifty percent (50%) of the following items are Tax Benefit Items:

(1) any separate return limitation year, as defined in Treasury Reg. § 1.1502-1(f) ("SRLY"), NOL of a subsidiary of Independence One;



MNBA&P001_0279

MNB100_00278
Damages Phase
CONFIDENTIAL

(2) the loss realized on the write-off of principal and accrued interest on the assets known as "the VMS loans;"

(3) the loss realized on the write-off of the asset known as "the 59th Street Joint Venture;" and

(4) the loss realized on the write-off of the asset known as "the Stamford Partnership."

(C) For purposes of Sections 9(d) and (e) of the Assistance Agreement, any adjustment to the reserve for bad debts of Independence One in excess of the amount actually charged to the reserve in such year, and the SRLY alternative minimum tax ("AMT") NOL deductions of Independence One, are not Tax Benefit Items.

~~(vii) Audit. The FDIC Manager reserves the right to conduct a full audit of the Net Tax Benefits due it for the taxable years from 1991, through and including 1993, consistent with the provisions of paragraph (vi) hereof, and nothing herein shall be construed to restrict the right of the FDIC's Office of Inspector General (the "OIG") to review Net Tax Benefit calculations for all years as part of an audit described in Section 8.4 hereof.~~

(b) <u>1994 Tax Benefits</u>. In lieu of any payment pursuant to Section 9 of the Assistance Agreement for Net Tax Benefits for the taxable year 1994 the following shall apply:

(i) The Termination Amount shall take into account, as a credit to the benefit of the FDIC Manager, [ Dollars ($_________)], which amount represents the sum of (A) thirty-five percent (35%) of the aggregate debits made to the SRA for the months ~~of~~ from and including January 1994, through ~~and including~~ June 1994, pursuant to the provisions of Sections 3(a)(2) and (3) of the Assistance Agreement, that are deductible on the 1994 consolidated federal tax return of the MNC Group, (B) fifteen and five-sixteenths percent (15.3125%) of the excess of (1) the aggregate costs, expenses, and losses that were incurred by Independence One during the months of January 1994~~,~~ through and including June 1994, reimbursed by the FDIC Manager pursuant to the terms of the Assistance Agreement (other than pursuant to Sections 3(a)(2) and (3) thereof) and deductible on the 1994 consolidated ~~1994~~ federal tax return of the MNC Group <u>over</u> (2) the aggregate credits made to the SRA for the months of January 1994, through and including June 1994, pursuant to Section 3(b)(1) of the Assistance Agreement to the extent that such credits are included in taxable income on the MNC Group's federal and state tax returns, and (C) fifteen and five-sixteenths percent (15.3125%) of interest earned on the Note for the period from January 1, 1994 through and including September 30, 1994.

(ii) On September 30, 1994, MNC and Independence One shall credit the SRA for an amount equal to the amount calculated pursuant to ~~paragraphs (b)(i)~~ clauses (A) and (B) of Section 2.4(b)(i) above, but substituting the months of "July 1994 through and including September 1994" for the months of "January 1994 through and including June 1994."

(c) <u>Change of Accounting Method for Reserve for Bad Debts</u>. Not later than January 30, 1995, Independence One shall file with the IRS a request for permission to change its method of accounting for bad debts from the reserve method to the specific charge-off method beginning in calendar year 1995, and at the time of such filing shall provide a copy of the request to the FDIC Manager. If such request is granted, Independence One shall not file a request for permission, or otherwise seek, to return to the reserve method until the year after the year in which the net amount of adjustments required by Section 481 of the Internal Revenue Code of 1986, as amended (the "Code"), to be taken into account by Independence One as a result of the change to the specific charge-off method has been fully taken into account. Independence One shall provide a copy of any IRS approval or denial of such request within thirty ~~(3)~~ (30) days after the receipt of such approval or denial. If such request is not filed, or is denied, Independence One shall pay to the FDIC Manager on January 31, 1995, or the date that its request is

denied, [ Dollars ($__________)-
].

(d) SRLY NOL Carryforwards and SRLY Tax Credits. Beginning with its 1994 taxable year and for each taxable year thereafter, Independence One and MNC shall pay to the FDIC Manager, at the time and in the manner specified in ~~paragraph (e)~~ Section 2.4(e) below, the following amounts:

(i) an amount equal to fifty percent (50%) of the product of (A) the amount of NOL carryforwards of Independence One and of its subsidiaries that were incurred in a SRLY~~,~~ and deducted on a federal tax return in a subsequent taxable year and (B) the highest federal corporate tax rate in effect ~~in~~ for the taxable year ~~that~~ with respect to which such NOL was deducted;

(ii) fifty percent (50%) of the amount of tax credits of Independence One and its subsidiaries that were incurred in a SRLY and claimed on a federal tax return in a subsequent taxable year;

(iii) an amount equal to fifty percent (50%) of the product of (A) the amount of NOL carryforwards of Independence One and its subsidiaries that were incurred in a SRLY and deducted on a state tax return in a subsequent taxable year~~,~~ and (B) the highest state corporate tax rate in effect ~~in~~ for the taxable year ~~that~~ with respect to which such NOL was deducted; and

(iv) fifty percent (50%) of the amount of any tax credits of Independence One and its subsidiaries that were incurred in a SRLY and claimed on a state tax return in a subsequent taxable year.

(e) Payment of SRLY NOL and Credit Benefits. The amount owed to the FDIC Manager for any taxable year pursuant to ~~paragraph (d)~~ Section 2.4(d) above shall be paid as follows:

(i) Not later than thirty (30) days following the filing of a federal tax return for a taxable year ~~in~~ with respect to which an NOL or tax credit referred to in ~~paragraphs (d)(i)~~ Sections 2.4(d)(i) and (ii) above is deducted or claimed (the "Subject Year"), Independence One and MNC shall pay to the FDIC Manager an amount equal to the excess of (A) the sum of the amounts provided for in ~~paragraphs (d)(i)~~ Sections 2.4(d)(i) and (ii) above, over (B) fifty percent (50%) of the AMT liability for such Subject Year;

(ii) Not later than thirty (30) days following the filing of any subsequent year's federal tax return claiming a credit for the AMT paid in a Subject Year, Independence One and MNC shall pay to the FDIC Manager an amount equal to fifty percent (50%) of the amount claimed as a credit for the AMT paid in the Subject Year;

(iii) Not later than thirty (30) days following the filing of a state tax return for a Subject Year in which an NOL or tax credit referred to in ~~paragraphs (d)(iii)~~





CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0283

Sections 2.4(d)(iii) and (iv) above is deducted or claimed, Independence One and MNC shall pay to the FDIC Manager an amount equal to the excess of (A) the sum of the amounts provided for in paragraphs (d)(iii) and (iv) above, over (B) fifty percent (50%) of the state equivalent of the federal AMT liability, if any, for such Subject Year; and

(iv) Not later than thirty (30) days following the filing of any subsequent year's state tax return claiming a credit for the state equivalent AMT paid in a Subject Year, Independence One and MNC shall pay to the FDIC Manager an amount equal to fifty percent (50%) of the amount claimed as a credit for the state equivalent AMT paid in the Subject Year.

(f) SRLY AMT NOLs.

(i) Independence One and MNC have previously made payments to the FDIC Manager of the following amounts which represent the FDIC Manager's twenty-five percent (25%) share of the tax benefit realized by the ~~use~~ deduction of Independence One's SRLY AMT NOLs ~~in~~ on its federal tax returns with respect to taxable years from and including 1989~~,~~ through ~~and including~~ 1992, and ~~the Termination Amount includes,~~ as a credit to Independence One, the Termination Amount has been calculated net of such amounts in order to effect the repayment of such amounts by the FDIC Manager:

| Taxable Year | Dollar Amount |
|---|---|



MNBA&P001_0285

MNB100_00284
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0284

| | |
|---|---|
| 1989 | $268,435 |
| 1990 | $1,854,840 |
| 1991 | $3,766,558 |
| 1992 | $3,151,525 |
| Total | $9,041,358 |

(ii) The repayment of the amounts specified in ~~paragraph (f)(i)~~ Section 2.4(f)(i) above by the FDIC Manager is premised on the assumption that such SRLY AMT NOLs will ultimately not be allowed to be ~~utilized~~ deducted by the MNC Group in the taxable years from and including 1989~~,~~ through ~~and including~~ 1992. If such SRLY AMT NOLs are not ~~utilized~~ deducted in the taxable years from 1989~~,~~ through and including 1992, the parties hereto anticipate that such SRLY AMT NOLs will be ~~utilized~~ deducted in the following years when, if the Assistance Agreement were to remain in effect, the FDIC Manager would be entitled to fifty percent (50%) rather than twenty-five percent (25%) of the tax benefit realized therefrom, and therefore would be entitled to the following payments:

| Taxable Year | Dollar Amount |
|---|---|
| 1998 | $4,128,716 |
| 1999 | $5,844,000 |
| 2000 | $5,844,000 |
| 2001 | $2,266,000 |
| Total | $18,082,716 |

In lieu of tracking and paying such benefits in these future years, the Termination Amount includes, as a credit to the FDIC Manager, an amount equal to [ Dollars



MNBA&P001_0286

MNB100_00285
Damages Phase
CONFIDENTIAL

($__________)] (the present value of such amounts discounted at a fifteen percent (15%) rate).

(iii) In the event that all or a portion of the SRLY AMT NOLs ~~claimed~~ deducted in the taxable years from and including 1989~~,~~ through ~~and including~~ 1992 are allowed, the parties hereto agree that the payments referred to in ~~paragraphs (f)(i)~~ Sections 2.4(f)(i) and (ii) above shall be unwound to the extent necessary to put each of Independence One and the FDIC Manager in the position that it would have been in if the parties hereto had known with certainty on the Closing Date the portion of the SRLY AMT ~~NOLs~~ NOL deductions that would be allowed for the taxable years from and including 1989~~,~~ through ~~and including~~ 1992. To effectuate this result, with respect to each of the taxable years from and including 1989~~,~~ through ~~and including~~ 1992, Independence One and MNC shall make a net payment to the FDIC Manager, computed in accordance with ~~paragraph (f)(iv)~~ Section 2.4(f)(iv) below, within thirty (30) days after the later of (A) the effective date of a definitive agreement between the MNC Group and the IRS as to the portion of the SRLY AMT NOLs ~~claimed~~ deducted in such year that ~~are~~ is allowed, and (B) the expiration date of the statute of limitations after which the IRS may no longer make adjustments to the MNC Group consolidated federal tax return for such year.



MNBA&P001_0287

MNB100_00286
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0286

(iv) For any taxable year the net payment to be made pursuant to Section 2.4(f)(iii) shall be calculated according to the following table:

| If 10% of the aggregate SRLY AMT NOL deductions <u>that are allowed is</u>: | The payment shall be: |
|---|---|
| 1. Not over $2,266,000 | An amount equal to the difference between (x) 5% of the aggregate SRLY AMT NOL deductions that are allowed and (y) the product of (A) 10% of the aggregate SRLY AMT NOL deductions that are allowed and (B) 32.7%. |
| 2. Over $2,266,000 but not over $8,110,000 | An amount equal to the sum of (x) the amount computed in 1 above and not previously paid <u>plus</u> (y) an amount equal to the difference between (A) 5% of the aggregate SRLY AMT NOL deductions in excess of $2,266,000 that are allowed and (B) the product of (i) 10% of the aggregate SRLY AMT NOL deductions in excess of $2,266,000 that are allowed and (ii) 37.6%. |
| 3. Over $8,110,000 but not over $13,954,000 | An amount equal to the sum of (x) the sum of the amounts computed in 1 and 2 above that were not previously paid, <u>plus</u> (y) an amount equal to the difference between (A) 5% of the aggregate SRLY AMT NOL deductions in excess of $8,110,000 that are allowed and (B) the product of (i) 10% of the aggregate SRLY AMT NOL deductions in excess of $8,110,000 that are allowed and (ii) 43.2%. |
| 4. Over $13,954,001 but | |



MNBA&P001_0288

MNB100_00287
Damages Phase
CONFIDENTIAL

| | |
|---|---|
| not over $18,082,716 | An amount equal to the sum of (x) the sum of the amounts computed in 1 and 2 above that were not previously paid, plus (y) an amount equal to the difference between (A) 5% of the aggregate SRLY AMT NOL deductions in excess of $13,954,001 but not over $18,082,716 and (B) the product of (i) 10% of the aggregate SRLY AMT NOL deductions in excess of $13,954,001 but not over $18,082,716 that are allowed and (ii) 49.7%. |

Plus interest at a rate equal to _____ percent ( ___%) per annum from and including the Closing Date, ~~through and including~~ to but excluding the date of payment.

For illustration, Exhibit 2.4(f)(iv) attached hereto contains these calculations on the assumption that fifty percent (50%) of the SRLY AMT NOLs claimed in each of the taxable years from and including 1989~~,~~ through ~~and including~~ 1992 are ultimately allowed.

(g) Audit Adjustments.

(i) In the event that the MNC Group consolidated federal tax returns, or equivalent state tax returns, for the taxable years from and including 1989~~,~~ through ~~and including~~ 1993 are adjusted as the result of an IRS, or equivalent state agency, audit in a manner which affects a Tax Benefit Item (as such term is clarified for such years by ~~subsection (a)(vi)~~ Section 2.4(a)(vi) above), other than the SRLY AMT NOLs separately provided for in ~~paragraph (f)~~ Section 2.4(f) above, or Tax Detriment Item, and the FDIC Manager has agreed to such adjustment, or such

adjustment has been the subject of an administrative or judicial determination which has become final and from which, with the consent of the FDIC Manager, no appeal has been taken, then, to the extent that the effect of the adjustment would not reverse in a prior or future year, within thirty (30) days following the agreement of the FDIC Manager to such adjustment, or the administrative or judicial determination becoming final without appeal, as the case may be, MNC and Independence One shall recompute the calculations for any such taxable years ~~pursuant to~~ as if Sections 9(c), (d), (e), and (g) of the Assistance Agreement had not been terminated , taking into account such adjustments (and the clarifications in ~~subsection (a)(iv) above), and the effect that such adjustments may have on Net Tax Benefits in all other years,~~ Section 2.4(a)(iv) above) and deliver to the FDIC Manager such written documentation as is necessary to permit the FDIC Manager to verify the calculation. Within thirty (30) days after the receipt of such documentation, the FDIC Manager shall either agree with MNC's calculation , in which case such amount shall be paid the next day to MNC~~,~~ or the FDIC Manager, as the case may be, or shall notify MNC of its disagreement, in which event the parties hereto shall work together expeditiously to reach agreement on the correct amount and the payment thereof.

(ii) In the event that the MNC Group consolidated federal tax return for taxable year 1994 is adjusted as a result of an IRS audit proposal to disallow the deduction of, or to include in income, any portion of the amounts described in ~~subsection (b)~~ Section 2.4(b) above, and the FDIC Manager has agreed to such adjustment, or such adjustment has been the subject of any administrative or judicial determination which has become final and from which, with the consent of the FDIC Manager, no appeal has been taken, then, to the extent that a deduction or exclusion from income in the amount of the adjustment is not allowed or allowable in a prior or future year, within thirty (30) days following the agreement of the FDIC Manager to such adjustment, or the administrative or judicial determination becoming final without appeal, as the case may be, MNC and Independence One shall recompute that portion of the amount credited to the benefit of the FDIC Manager under ~~subsection (b)~~ Section 2.4(b) above which is attributable to such IRS adjustment, and deliver to the FDIC Manager such written documentation as is necessary to permit the FDIC Manager to verify the calculation. Within thirty (30) days after the receipt of such documentation, the FDIC Manager shall either agree with MNC's calculation, in which case such amount shall be paid the next day to MNC, or shall notify MNC of its disagreement in which event the parties

hereto shall work together expeditiously to reach agreement on the correct amount and the payment thereof.

(iii) In the event that any MNC Group consolidated federal tax return, or equivalent state tax return, is adjusted as a result of an IRS, or equivalent state agency, audit proposal to disallow the deduction of any portion of an item for which the FDIC Manager has made an indemnification payment to Independence One pursuant to Section 10.1(f) hereof in an amount equal to sixty-three percent (63%) of such Item, and the FDIC Manager has agreed to such adjustment, or such adjustment has been the subject of any administrative or judicial determination which has become final and from which, with the consent of the FDIC Manager, no appeal has been taken, then, to the extent that a deduction in the amount of the adjustment is not allowed or allowable in a prior or future year, within thirty (30) days following the agreement of the FDIC Manager to such adjustment, or the receipt of notice by the FDIC Manager that an administrative or judicial determination has become final without appeal, as the case may be, the FDIC Manager shall pay to MNC thirty-five percent (35%) of the portion of the item that was adjusted on the consolidated federal tax return and two percent (2%) of the portion of the item that was adjusted on the equivalent state tax return.

(iv) In the event that the MNC Group consolidated federal tax return, or equivalent state tax return, is

adjusted as a result of an IRS, or equivalent state agency, audit proposal to disallow the deduction of any portion of a SRLY NOL or disallow any SRLY credit for which MNC has made a payment to the FDIC Manager pursuant to ~~subsections (d)~~ Sections 2.4(d) and (e) hereof, and the FDIC Manager has agreed to such adjustment, or such adjustment has been the subject of any administrative or judicial determination which has become final and from which, with the consent of the FDIC Manager, no appeal has been taken, then, to the extent that a deduction or credit, as the case may be, in the amount of the adjustment~~,~~ is not allowed or allowable in a prior or future year, within thirty (30) days following the agreement of the FDIC Manager to such adjustment, or the administrative or judicial determination becoming final without appeal, as the case may be, MNC shall calculate an amount equal to the difference between the amount that was paid for such item and the amount that would have been paid for such item if the adjusted amount had been reflected on the return at the time that the calculations under ~~subsections (d)~~ Sections 2.4(d) and (e) which gave rise to the payment from MNC to the FDIC Manager were made. Within such thirty (30)-day period MNC shall deliver to the FDIC Manager such written documentation as is necessary to permit the FDIC Manager to verify the calculation. Within thirty (30) days after the receipt of such documentation, the FDIC Manager shall either agree with MNC's calculation, in which

case such amount shall be paid the next day to MNC, or notify MNC of its disagreement, in which event the parties hereto shall work together expeditiously to reach agreement on the correct amount and the payment thereof.

(v) In the event that, as a result of an IRS audit, the amount of the nonSRLY NOL carryforward of the MNC Group ~~on~~ as of January 1, 1994 is reduced below [____________ Dollars ~~$________~~ ($________)] (the amount reflected on the MNC Group's taxable year 1993 consolidated federal tax return), and the FDIC Manager has agreed to such reduction, or such reduction has been the subject of an administrative or judicial determination which has become final and from which, with the consent of the FDIC Manager, no appeal has been taken, then, to the extent that deductions in the amount of the reduction are not allowed or allowable in a prior or future year, within thirty (30) days following the receipt of a copy of a consolidated federal tax return that has been filed by MNC accompanied by pro forma schedules demonstrating that the disallowed portion of such NOL could and would have been claimed as a deduction on such return, and would have offset taxable income on such return, if it had not been disallowed, the FDIC Manager shall pay to MNC an amount equal to 17.5% of such reduction.

(vi) In the event that, as a result of an IRS audit, the amount of the AMT credit carryforward of the MNC Group on January 1, 1994 is reduced below the difference between

(A) Fifty-One Million, Five Hundred Fifteen Thousand, Thirty-Seven Dollars ($51,515,037) (the amount reflected on the MNC Group's taxable year 1993 consolidated federal tax return), and (B) an amount equal to twenty percent (20%) of Independence One's SRLY AMT NOLs that are allowed in the taxable years from and including 1989, through ~~and including~~ 1992, and the FDIC Manager has agreed to such reduction, or such reduction has been the subject of any administrative or judicial determination which has become final and from which, with the consent of the FDIC Manager, no appeal has been taken, then, to the extent that credits in the amount of the reduction are not allowed or allowable in a prior or future year, within thirty (30) days following the receipt of a copy of a consolidated federal tax return that has been filed by MNC, accompanied by pro forma schedules demonstrating that the disallowed portion of such AMT credit carryforward could and would have been claimed as a credit on such return, and would have offset tax liability shown on such return, if it had not been disallowed, the FDIC Manager shall pay to MNC an amount computed in accordance with the following table:

| If the reduction is: | The payment shall be an amount equal to: |
|---|---|
| 1. Not over $5,178,260 | The sum of (x) the product of (A) 50% of the amount of the reduction and (B) 32.7%, plus (y) interest on the amount computed in (x) at the rate of 15% compounded annually from the Closing Date until the |







CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0294

| | | |
|---|---|---|
| | | date of payment, but not in excess of 50% of the amount of the reduction. |
| 2. | Over $5,178,260 but not over $18,535,974 | The sum of (x) the amount computed in 1 above, plus (y) the product of (A) 50% of the amount of the reduction over $5,178,260 and (B) 37.6%, plus (z) interest on the amount computed in (y) at the rate of 15% compounded annually from and including the Closing Date ~~until~~ to but excluding the date of payment, but not in excess of 50% of the amount of the reduction. |
| 3. | Over $18,535,974 but not over $31,893,688 | The sum of (x) the sum of the amounts computed in 1 and 2 above, plus (y) the product of (A) 50% of the amount of the reduction over $18,535,974 and (B) 43.2%, plus (z) interest on the amount computed in (y) at the rate of 15% compounded annually from and including the Closing Date ~~until~~ to but excluding the date of payment, but not in excess of 50% of the amount of the reduction. |
| 4. | Over $31,893,688 but not over $46,001,402 | The sum of (x) the sum of the amounts computed in 1, 2, and 3 above, plus (y) the product of (A) 50% of the amount of the reduction over $31,893,688 and (B) 49.7% plus (z) interest on the amount computed in (y) at the rate of 15% compounded annually from and including the Closing Date ~~until~~ to but excluding the date of payment, but not in excess of 50% of the amount of the reduction. |
| 5. | Over $46,001,402 but | |

| | |
|---|---|
| not over $51,515,037 | The sum of (x) the sum of the amounts computed in 1, 2, 3, and 4 above, plus (y) the product of (A) 50% of the amount of the reduction over $46,001,402 but not over $51,515,037 and (B) 57.2%, plus (z) interest on the amount computed in (y) at the rate of 15% compounded annually from and including the Closing Date ~~until~~ to but excluding the date of payment, but not in excess of 50% of the amount of the reduction. |

(vii) In the event that any payment is due from the FDIC Manager to MNC pursuant to this ~~subsection (g)~~ Section 2.4(g) , the FDIC Manager shall also pay to MNC an amount equal to eighty-two and one half percent (82.5%) of any interest and one hundred percent (100%) of any penalties (other than penalties imposed for negligence or willful misconduct or both) due to the IRS or equivalent state taxing authority to the date of such payment that is allocable to the reduction of any Tax Benefit Item or increase in any Tax Detriment Item that resulted in a payment of Net Tax Benefits to the FDIC Manager.

(viii) In the event that the amount of the nonSRLY NOL carryforward or the AMT credit carryforward of the MNC Group is increased above the amounts provided in ~~paragraphs~~ Sections 2.4(g)(v) and (vi) above, then within thirty (30) days following the filing of a federal tax return on which such excess NOL is deducted or such excess credit is claimed, MNC and Independence One shall pay to the FDIC



MNBA&P001_0297

MNB100_00296
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0296

Manager an amount equal to seventeen and one half percent (17.5%) of the NOL and fifty percent (50%) of the AMT credit so deducted or claimed. In the event that the NOL deducted or AMT credit claimed is later disallowed in an IRS audit, it shall be treated as if it were an item to which ~~paragraph~~ Section 2.4(g)(iv) above applies.

(h) Documentation. With respect to all amounts which are due from MNC and Independence One to the FDIC Manager, and from the FDIC Manager to Independence One and MNC, MNC and Independence One shall accompany its payments or notices to the FDIC Manager with supporting calculations of the amount due, certified by ~~[ ]~~ MNC's independent accountant to be correct. In addition, MNC shall, upon the request of the FDIC Manager, provide copies of IRS or state taxing authority Revenue Agent Reports and tax returns filed on behalf of itself and any member of the MNC Group for any taxable years specified by the FDIC Manager, together with such related workpapers and materials as the FDIC Manager shall specify.

(i) Amended Returns. Neither MNC nor any member of the MNC Group shall file an amended federal or state tax return for the taxable years from and including 1989~~,~~ through ~~and including~~ 1993, unless such amendment is required by an IRS, or equivalent state agency audit.

(j) State Tax. All references herein to state tax shall include any franchise or other tax which is based on or measured by net income and is the equivalent of an income tax.

(k) Tax Benefit Audit.

(i) The FDIC Manager reserves the right to conduct a full audit ("Tax Benefit Audit") of the Net Tax Benefits due to the FDIC Manager for each taxable year pursuant to Sections 2.4(a)(ii)-(iv), (b), (d), (e), and (f) hereof, and nothing herein shall be construed to restrict the right of the FDIC's Office of Inspector General (the "OIG") to review Net Tax Benefit calculations for all years as part of an audit described in Section 8.4 hereof. The Tax Benefit Audit shall result in a Final Tax Benefit Payment for each such taxable year, if any, in accordance with Section 2.4(k)(ii) below.

(ii) For purposes of this Article II, a "Final Tax Benefit Payment" shall mean the amount, if any, which shall be paid by the MNC Group to the FDIC Manager, resulting from the Tax Benefit Audit. In the event that a Final Tax Benefit Payment is to be made by the MNC Group, such payment shall be made to the FDIC Manager in immediately available funds no later than thirty (30) days after the date of completion of the Tax Benefit Audit, together with interest on such amount at the rate equal to the thirteen (13)-week U.S. Treasury Bill rate (the "Interest Rate").

## ARTICLE III
## TRANSFER OF LITIGATION

3.1 Transferred Cases.





CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0298

(a) Effective upon the Closing Date, the FDIC Manager shall assume the responsibility for managing and conducting all proceedings relating to the litigation cases (the "Transferred Cases") listed on Exhibit 3.1(a) hereto. Immediately following the Closing, Independence One will advise its outside counsel in writing of the FDIC's assumption of the responsibility for managing the Transferred Cases and direct its outside counsel to prepare those documents reasonably necessary to designate new counsel of record for the Transferred Cases.

(b) Effective upon the Closing Date, the FDIC Manager shall pay all legal fees and expenses incurred in connection with the Transferred Cases on or after the Closing Date and shall indemnify and hold harmless the Independence One Indemnitees (as defined in Section 10.1) from all claims for such legal fees and expenses.

## ARTICLE IV
## POST-CLOSING AUDIT

Section 4.1 Generally. The FDIC Manager shall use its best efforts to ensure that within one (1) year following the Closing Date, the FDIC Manager or its designee shall commence an audit (the "Post-Closing Audit") of (a) all amounts credited or debited to the SRA from [September 30, 1992], through and including the Closing Date, including such amounts provided in the final quarterly report required to be filed on December 31, 1994 by Independence One or MNC for the quarter ending September 30, 1994 (the "Final SRA Report"), and (b) all payments by the FDIC

Manager or its predecessor to Independence One pursuant to the Assistance Agreement and this Agreement from ~~{~~September 30, 1992~~}~~, through and including the Closing Date. The Post-Closing Audit shall result in a Final Payment, if any, in accordance with Section 4.2 below.

Section 4.2 Final Payment. For purposes of this Article IV, "Final Payment" shall mean the amount, if any, which shall be paid by either the FDIC Manager to Independence One or MNC, or by Independence One ~~or~~ and MNC to the FDIC Manager, resulting from the Post-Closing Audit and determined in accordance with the following calculations: (i) the FDIC Manager shall pay to Independence One or MNC the amount, if any, by which (A) any net adjustment in Independence One's or MNC's favor determined pursuant to this Article IV, exceeds (B) any net adjustment in the FDIC Manager's favor determined pursuant to this Article IV, together with interest on such excess at the rate equal to the ~~thirteen (13) week U.S. Treasury Bill rate (the "Interest Rate")~~ Interest Rate from and including the Closing Date to but excluding the date of such payment; or (ii) Independence One ~~or~~ and MNC shall pay to the FDIC Manager the amount, if any, by which (A) any net adjustment in the FDIC Manager's favor determined pursuant to this Article IV, exceeds (B) any net adjustment in Independence One's or MNC's favor determined pursuant to this Article IV, together with interest on such excess at the Interest Rate from and including the Closing Date to but excluding the date of such payment. In the event the

Final Payment is to be made by (i) the FDIC Manager, such payment shall be made to Independence One or MNC in immediately available funds no later than thirty (30) days after the date of completion of the Post-Closing Audit, or (ii) Independence One or MNC, such payment shall be made to the FDIC Manager in immediately available funds no later than thirty (30) days after ~~submission~~ completion of the ~~Final SRA Report~~ Post-Closing Audit.

Section 4.3 <u>Post-Closing Audit Procedures</u>. The parties hereto agree that the Post-Closing Audit, and any adjustments as a result thereof, shall be conducted and determined in accordance with the following procedures:

(a) Until completion of the Post-Closing Audit, Independence One and MNC shall cause to be made available to the FDIC Manager or its designees, at such times and places as the FDIC Manager may reasonably request, all books, papers, records and information of any kind in the possession of Independence One and MNC relating to any and all matters within the scope of the Post-Closing Audit.

(b) Within thirty (30) days after the FDIC Manager delivers a copy of the final audit report resulting from the Post-Closing Audit to Independence One and MNC, Independence One and MNC shall provide the FDIC Manager a written description of any items in the Post-Closing Audit with which Independence One or MNC disagrees (the "Disputed Items"). If Independence One or MNC fail to provide a written description of any particular Disputed Item within such thirty (30)-day period, Independence One and MNC

forever waive their rights to dispute any such item in the Post-Closing Audit.

(c) If there are Disputed Items, then the FDIC Manager and Independence One and/or MNC shall attempt to resolve such items within thirty (30) days following receipt by the FDIC Manager of the written description of the Disputed Items (the date on which such thirty (30)-day period expires, or any extension of such period as the parties hereto may mutually agree to in writing, herein called the "Resolution Deadline Date"). If the FDIC Manager and Independence One and/or MNC resolve all such items by the Resolution Deadline Date, then within thirty (30) days following such resolution, the Final Payment shall be made.

(d) If the FDIC Manager and Independence One and/or MNC fail to resolve any outstanding Disputed Items by the Resolution Deadline Date, then Independence One and/or MNC may notify the FDIC Manager of their intent to submit specific item(s) of unresolved Disputed Items to dispute resolution pursuant to Article V hereof. Independence One and/or MNC and the FDIC Manager shall submit their determinations of the appropriate amount of each Disputed Item to the Review Board described in Section 5.2 herein, when selected. Failure to notify the FDIC Manager of Independence One's and/or MNC's intent to submit any unresolved Disputed Item to dispute resolution (together with Independence One's and/or MNC's determination of the appropriate amount of such Dispute Item) within ten (10) days following the Resolution Deadline Date shall be deemed an acceptance of such

non-submitted Disputed Item(s), as well as a waiver of Independence One's and/or MNC's right to dispute such non-submitted Disputed Item(s).

(e) The FDIC Manager and Independence One and/or MNC shall facilitate the resolution of any outstanding disputes regarding the Post-Closing Audit by making available in a prompt and timely manner to one another and the Review Board for examination and copying, as appropriate, all relevant documents, books, and records under their respective control.

(f) In the event that a Disputed Item is submitted to dispute resolution pursuant to Article V hereof, in issuing a decision the Review Board shall select, with respect to each such Disputed Item submitted, either (i) the determination of such Disputed Item pursuant to the Post-Closing Audit, or (ii) the determination submitted by Independence One and/or MNC with respect to such Disputed Item; the Review Board shall have no authority to select a value for any Disputed Item other than the determinations set forth in ~~clauses~~ clause (i) or (ii) of this ~~paragraph~~ Section 4.3(f). The Final Payment shall be made within ten (10) days of the decision made by the Review Board.

## ARTICLE V
## DISPUTE RESOLUTION

**Section 5.1** **Disputes**. Any dispute arising under this Agreement shall be resolved by determination of a review board (a "Review Board") established pursuant to Sections 5.2(i) and (ii) hereof. The resolution of disputes by a Review Board under this



MNBA&P001_0304

MNB100_00303
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0303

Article V shall be specifically enforceable under applicable arbitration law. Independence One and MNC shall be deemed one party in proceedings under this ~~Section 5~~ Article V. Subject to the Administrative Dispute Resolution Act (Public Law 101-648), such dispute resolution shall be the exclusive remedy for any dispute, controversy, or claim between the parties hereto.

**Section 5.2 Review Board.**

~~Section 5.2 Review Board. (i)~~ (a) A Review Board shall consist of three (3) members, each of whom shall have such expertise as the parties to the dispute to be resolved by such Review Board agree is relevant. One member will be selected by the FDIC Manager ~~the ("FDIC Party")~~, one member will be selected by Independence One or MNC, as appropriate (the "Independence One/MNC Party"), and the third member (the "Neutral Member") will be selected by the other two members. The member of the Review Board selected by either party may be removed at any time by such party upon two (2) days' written notice to the other party of the selection of a replacement member. The Neutral Member may be removed by unanimous action of both of the members appointed by the FDIC ~~Party~~ Manager and the Independence One/MNC Party upon two (2) days' written notice to the FDIC ~~Party~~ Manager and the Independence One/MNC Party of the selection of a replacement Neutral Member.

~~(ii)~~ (b) No dispute may be submitted to a Review Board by any of the parties to this Agreement unless such party has provided to the other party to the dispute a written notice of

its intention to do so (any such notice being referred to herein as a "Notice of Dispute"). During the forty-five (45)-day period following the giving of a Notice of Dispute, the parties to the dispute will make every effort in good faith to resolve the dispute by mutual agreement. If the parties have not agreed to a resolution of the dispute by the end of such forty-five (45)-day period, then on the first day following the end of such period the FDIC ~~Party~~ Manager and the Independence One/MNC Party shall notify each other of its selection of its member of the Review Board and such members shall be instructed to promptly select the Neutral Member of the Review Board. If the members appointed by the FDIC ~~Party~~ Manager and the Independence One/MNC Party are unable to agree upon the selection of the Neutral Member, or a replacement Neutral Member, the two appointed members shall apply to the American Arbitration Association (the "AAA"), and ~~such member~~ the Neutral Member shall be appointed in accordance with the Commercial Arbitration Rules of the AAA.

~~(iii)~~(c) The resolution of a dispute pursuant to this Article V shall be governed by the Commercial Arbitration Rules of the AAA to the extent that such Rules are not inconsistent with this Article V. The Review Board may modify the procedures set forth in such Rules from time to time with the prior approval of the FDIC ~~Party~~ Manager and the Independence One/MNC Party.

~~(iv)~~(d) Within fifteen (15) days after the last to occur of the final written submissions of both parties, the presentation of witnesses, if any, and oral presentations, if any, the Review



MNBA&P001_0306

MNB100_00305
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0305

Board shall adopt the position of one of the parties and shall present to the parties a written statement of its determination regarding the dispute. The determination of any two (2) members of a Review Board will constitute the determination of such Review Board.

~~(v)~~(e) The FDIC ~~Party~~ Manager and the Independence One/MNC Party will each pay the fees and expenses of the member of the Review Board selected by it. The FDIC ~~Party~~ Manager and Independence One/MNC Party will share equally the fees and expenses of the Neutral Member.

~~(vi)~~(f) Each party will bear all costs and expenses incurred by it in connection with the submission of any dispute to a Review Board.

~~(vii)~~(g) Any dispute resolution proceeding held pursuant to this Article V shall not be public. In addition, each party and each member of any Review Board shall strictly maintain the confidentiality of all issues, disputes, arguments, positions, interpretations, awards, determinations, and decisions of any such proceeding, as well as all information, attachments, enclosures, exhibits, summaries, compilations, studies, analyses, notes, documents, statements, schedules, and other similar items associated therewith. No decision, interpretation, determination, analysis, statement, award, or other pronouncement of any Review Board shall constitute precedent as regards any subsequent proceeding (whether or not such proceeding involves dispute resolution under this Article V) nor shall any Review

Board be bound to follow any decision, interpretation, determination, analysis, statement, award, or other pronouncement rendered by any previous Review Board or any other previous dispute resolution panel which may have convened in connection with a transaction involving other failed financial institutions or Federal assistance transactions.

## ARTICLE VI
## CONDITIONS PRECEDENT TO CLOSING

Section 6.1 Conditions to Obligations of the FDIC Manager. The obligations of the FDIC Manager under this Agreement shall be subject to the waiver in writing by the FDIC Manager or fulfillment, on or prior to the Closing Date, of each of the following conditions precedent:

(a) Certified Resolutions. The FDIC Manager shall have received certificates from Independence One and MNC, signed by their respective corporate secretaries and dated the Closing Date, certifying that (i) ~~the board~~ their respective boards of directors ~~has~~ have duly adopted resolutions, copies of which shall be attached to such certificate, (A) approving the terms of this Agreement and authorizing the consummation of the transactions contemplated by this Agreement and (B) authorizing an officer of Independence One and MNC, respectively, to execute and deliver this Agreement and all necessary ancillary documents; (ii) all of such resolutions are in full force and effect; and (iii) none of such resolutions has been amended or modified.

(b) Incumbency Certificates. The FDIC Manager shall have received certificates from Independence One and MNC, signed by their respective corporate secretaries and dated the Closing Date, certifying as to each person executing this Agreement on behalf of Independence One and MNC, respectively, that (i) such person is an officer of Independence One or of MNC holding the office or offices specified therein; and (ii) the signature of each such person set forth on such certificate is his or her genuine signature.

(c) Legal Opinions. The FDIC Manager shall have received from Independence One and MNC signed opinions addressed to the FDIC Manager dated the Closing Date and substantially in the form of Exhibits 6.1(c)(i) and (ii) hereto, with such changes as the FDIC Manager, or its legal counsel, may approve.

(d) Proceedings. All corporate and other proceedings taken in connection with the transactions contemplated by this Agreement, and all documents incident thereto, shall be satisfactory in form and substance to the FDIC Manager and its legal counsel, and the FDIC Manager shall have received such counterpart originals or certified or other copies of such documents as it may request.

(e) Consents and Approvals. The FDIC Manager shall have received satisfactory evidence that any and all governmental approvals or other third-party consents have been given which may be required in connection with the execution, delivery, and performance of this Agreement by Independence One and MNC.

(f) Accuracy of Representations and Warranties; Performance. The representations and warranties of Independence One and MNC contained in this Agreement shall be true and correct on and as of the Closing Date with the same effect as if made on and as of the Closing Date, and Independence One and MNC shall have performed or complied with all covenants, agreements, and conditions herein that they are required to perform or comply with on or prior to the Closing Date. The FDIC Manager shall have received a certificate from Independence One and MNC, respectively, executed by an executive officer thereof dated the Closing Date, certifying to the foregoing in the form attached hereto as Exhibit 6.1(f).

(g) Financial Condition. There shall have occurred no material change in the financial condition of Independence One or MNC after giving effect to the transactions contemplated by this Agreement.

Section 6.2 Conditions to Obligations of Independence One and MNC. The obligations of Independence One and MNC under this Agreement shall be subject to the waiver in writing by MNC or fulfillment, on or prior to the Closing Date, of each of the following conditions precedent:

(a) Accuracy of Representations and Warranties; Performance. The representations and warranties of the FDIC Manager contained in this Agreement shall be true and correct on and as of the Closing Date with the same effect as if made on and as of the Closing Date, and the FDIC Manager shall have performed

or complied with all covenants, agreements, and conditions herein that it is required to perform or comply with on or prior to the Closing Date.

(b) Proceedings. All corporate and other proceedings taken in connection with the transactions contemplated by this Agreement, and all documents incident thereto, shall be reasonably satisfactory in form and substance to Independence One and MNC and their legal counsel, and Independence One and MNC shall have received such counterpart originals or certified or other copies of such documents as they may reasonably request.

Section 6.3 Conditions to Obligations of the FDIC Manager, Independence One and MNC. The obligations of the FDIC Manager, Independence One and MNC under this Agreement shall be subject to the waiver in writing or fulfillment, on or prior to the Closing Date, of each of the following conditions precedent:

(a) OTS Approval. The receipt by Independence One of a notice (or approval, if necessary) from the Office of Thrift Supervision (the "OTS") that the OTS does not have supervisory objection to the transactions contemplated by this Agreement.

(b) Closing Date. The occurrence of the Closing on or prior to September 30, 1994, or such later date as mutually agreed to by the parties.

## ARTICLE VII
## REPRESENTATIONS AND WARRANTIES

Section 7.1 Representations and Warranties of Independence One and MNC. To induce the FDIC Manager to enter into this

Agreement and to consummate the transactions contemplated hereby, Independence One and MNC severally make the following representations and warranties (but only to the extent applicable to each party) to the FDIC Manager as of the date hereof, all of which shall survive the execution and delivery of this Agreement and the consummation of such transactions:

(a) Corporate Existence.

~~(1) Independence One is a Federally chartered~~

(1) Independence One is a Federally chartered stock savings bank duly organized, validly existing, and in good standing under the laws of the United States of America, with all requisite power and authority to (i) own and operate its properties and conduct its business as currently conducted by it, and (ii) engage in the activities and transactions described in and contemplated by this Agreement.

~~(2) MNC is a Michigan corporation duly organized,~~

(2) MNC is a Michigan corporation duly organized, validly existing, and in good standing under the laws of the State of Michigan with all requisite power and authority to (i) own and operate its properties and conduct its business as now conducted by it and (ii) engage in the activities and transactions described in and contemplated by this Agreement.

(b) Due Authorization. Independence One and MNC each has full power and authority to execute, deliver, and perform this

Agreement, and has taken all necessary action to authorize the execution, delivery, and performance of this Agreement in accordance with its terms.

(c) Binding Agreement. This Agreement has been duly authorized, executed, and delivered by Independence One and MNC and, when duly authorized, executed, and delivered by the FDIC Manager, this Agreement shall constitute a legal, valid, and binding obligation of Independence One and MNC, enforceable against each of them in accordance with its terms except as such enforceability may be limited by (i) bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally, and (ii) general equitable principles (regardless of whether the issue of enforceability is considered in a proceeding in equity or at law).

(d) Compliance with Law.

(1) Independence One and MNC are not, and their respective subsidiaries are not, in violation of any statute, regulation, order, decision, judgment, or decree of, or any restriction imposed by, the United States of America, any state, municipality, or other political subdivision thereof, or any agency of the foregoing, or any court or other competent tribunal having jurisdiction over Independence One, MNC, or their respective subsidiaries or any of their assets, or any foreign government or agency thereof having jurisdiction over Independence One, MNC, or their respective subsidiaries or any of their assets, or any

securities exchange or securities quotation system on which Independence One, MNC, or any of their respective subsidiaries' securities are listed or quoted, in respect of the conduct of their business or the ownership of their properties, which, either individually or in the aggregate with all such other violations, would adversely affect the financial condition of Independence One, MNC, or their respective subsidiaries, or Independence One's or MNC's observance or performance of the terms of this Agreement.

(2) The execution, delivery, and performance by Independence One and MNC of this Agreement will not violate or conflict with any provision of any applicable law or regulation, or any order, writ, judgment or decree of any court or governmental authority to which Independence One or MNC is otherwise subject.

(e) <u>Compliance with Obligations</u>.

(1) Independence One and MNC are not in violation or breach of, or in default under, any obligation, agreement, covenant, or condition contained in their respective bylaws or charter, and Independence One and MNC are not in violation or in breach of or in default under any contract, lease, or other instrument to which it is respectively a party (or which is binding on it or its assets), which violation, breach, or default, either individually or in the aggregate with all such other violations, breaches, and defaults, is material to the financial condition of

Independence One or MNC or their ability to observe or perform the terms of this Agreement.

(2) The execution, delivery, and performance by Independence One and MNC of this Agreement does not and will not (i) violate or conflict with any provision of the respective articles of association or organization or bylaws of Independence One and MNC, or (ii) result in a violation, or breach of, or default under, any contract, lease, or other instrument to which Independence One or MNC is a party (or which is binding on it or any of its assets).

(f) Approvals and Consents. All governmental approvals and other third party consents that are required in connection with the execution, delivery, or performance of this Agreement or the transactions contemplated by this Agreement by Independence One and MNC, if any, have been obtained.

(g) Litigation. There is no legal action, suit, investigation, or proceeding pending (in which Independence One or MNC is a party) or, to Independence One's or MNC's knowledge, threatened against or affecting Independence One or MNC (whether or not Independence One or MNC is a party thereto) or any of their respective subsidiaries or their assets which questions the validity of this Agreement, or any of the transactions contemplated hereby, which would be reasonably expected, either individually or in the aggregate with all such other actions, suits, investigations, or proceedings, to materially and adversely affect the financial condition of Independence One or

MNC or their ability to perform, satisfy, or observe any obligation or condition under this Agreement.

(h) Capital Compliance. After giving effect to the transactions contemplated by this Agreement, Independence One will be in compliance with the minimum regulatory capital requirements of the OTS currently applicable to Independence One.

(i) Accuracy of Information. No representation or warranty made by Independence One or MNC in this Agreement contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained in this Agreement not misleading under the circumstance made or at the time furnished.

(j) Independence One Ownership Structure. All of the outstanding capital stock of Independence One is owned by MNC.

(k) Tax Matters.

(1) Independence One and MNC have supplied the Resolution Trust Corporation (the "RTC") or the FDIC Manager with all federal and state tax returns (the "Tax Returns") for Independence One or of the Consolidated Group of which it is a part (including amended returns) which have been filed for the periods ended December 31, 1988, December 31, 1989, December 31, 1990, December 31, 1991, December 31, 1992, and December 31, 1993, and, except as set forth in Exhibit 7.1(k) attached hereto and subject to any determinations by the IRS with respect to the Tax Returns that have not been examined, all such Tax Returns (i) were

prepared in the manner required by law, (ii) are true, correct, and complete in all material respects and have not been amended in any respect, and (iii) reflect the liability for taxes of MNC and Independence One in all material respects~~, and (iv) except~~. Except as set forth in Exhibit 7.1(k) attached hereto, (A) no issues that have been raised by the relevant taxing authority in connection with the examination of any of such Tax Returns are currently pending, and (B) no waivers of statutes of limitation have been requested or given with respect to such Tax Returns. Independence One is, and at all times during the term of the Assistance Agreement has been, a "domestic building and loan association" under the terms of Section 7701(a)(19) of the Code.

~~(2) Independence One shall not in any way preclude, estop or challenge the FDIC from raising any matters pertaining to Independence One's or MNC's tax computations in accordance with Section 9 of the Assistance Agreement on any tax returns that were filed for the periods ended December 31, 1991, December 31, 1992, and December 31, 1993; provided, however, that the FDIC may not require Independence One or MNC to make any adjustments (i) to any tax benefits attributable to any subsidiaries of Independence One, (ii) with respect to any bad debt reserve, or (iii) for other tax benefit computations other than for manifest error of Independence One or MNC.~~

(1) Environmental. Except as set forth in Exhibit 7.1(l), (i) Independence One has no knowledge of any written studies or reports regarding the presence of hazardous substances (as defined by the Environmental Protection Agency pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42 U.S.C. Section 9601 et seq.) on the property to which the Transferred Cases and the Covered Cases relate), (ii) Independence One has no knowledge of the discharge or existence of any hazardous substances on the property to which the Transferred Cases or the Covered Cases relate) of any hazardous substances, (iii) Independence One has not received and has no actual knowledge of any prior owner of the property to which the Transferred Cases or the Covered Cases relate) having received any notice of any kind relating to or in connection with the violation of any environmental statute including but not limited to the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. Section 6901 et seq., and CERCLA, and all regulations adopted pursuant to RCRA and CERCLA, (iv) Independence One has not caused any hazardous substances to be generated, treated, transported, stored, used, installed or disposed of in or on the property to which the Transferred Cases or the Covered Cases relate), (v) to the extent required by applicable state and federal law, Independence One has used reasonable efforts to protect the property to which the Transferred Cases or the Covered Cases relate against willful or wanton misconduct or grossly negligent acts or omissions of third

parties that might have resulted in the release of hazardous substances on the property to which the Transferred Cases or the Covered Cases relate and/or any adjoining property, and (vi) Independence One has materially complied with applicable state and federal notification, disclosure, and reporting requirements during the period of time that it has held title to any of the property to which the Transferred Cases or the Covered Cases relate.

Section 7.2 Representations and Warranties of the FDIC Manager. To induce Independence One and MNC to enter into this Agreement and to consummate the transactions contemplated hereby, the FDIC Manager hereby makes the following representations and warranties to Independence One and MNC as of the date hereof, all of which shall survive the execution and delivery of this Agreement and the consummation of such transactions:

(a) Power and Authorization. The execution, delivery, and performance of this Agreement (i) are within the legal power and authority of the FDIC Manager, and (ii) have been duly authorized by all necessary action on the part of the FDIC Manager.

(b) Binding Agreement. This Agreement has been duly authorized, executed, and delivered by the FDIC Manager, and upon the due authorization, execution, and delivery of this Agreement by Independence One and MNC, this Agreement shall be a legal, valid, and binding obligation of the FDIC Manager, enforceable against it in accordance with its terms except as such enforceability may be limited by (i) bankruptcy, insolvency,

reorganization or other similar laws affecting the enforcement of creditors' rights generally, and (ii) general equitable principles (regardless of whether the issue of enforceability is considered in a proceeding in equity or at law).

**ARTICLE VIII**
**COVENANTS**

Section 8.1 **Access to Books and Records**. Independence One and MNC shall cause to be made available to the FDIC Manager or its designee, at such times and places as the FDIC Manager may specify, all books, papers, records, and information of any kind relating to any or all matters subject to the Assistance Agreement, this Agreement, or both such Agreements, including any such materials or information in the possession or control of Independence One or MNC or any of their affiliates, subsidiaries, agents or counsel (including, but not limited to, tax returns and amended tax returns for any taxable years specified by the FDIC Manager or its designee).

Section 8.2 **Further Assurances**. Each of the parties hereto shall promptly and duly cause to be taken, executed, acknowledged or delivered all such further acts, conveyances, documents, and assurances as any party hereto may from time to time reasonably request in order more effectively to carry out the intent and purposes of this Agreement and the transactions contemplated hereby.

Section 8.3 **Costs and Expenses**. Except to the extent otherwise specifically provided herein, each party hereto agrees



MNBA&P001_0320

MNB100_00319
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0319

to pay all costs and expenses incurred by it in connection with or incidental to the matters contained in this Agreement, including any fees and disbursements of attorneys, accountants, and investment banking consultants.

Section 8.4 FDIC's OIG Matters.

(a) Maintenance of Records. Independence One and MNC shall maintain, for a period of not less than five (5) years from the Closing Date, all books, papers, records, and information of any kind relating to any and all matters subject to the Assistance Agreement, this Agreement, or both such Agreements, including any such materials or information in the possession or control of Independence One or MNC or any of their affiliates, subsidiaries, agents or counsel (including, but not limited to, tax returns and amended tax returns for any taxable years specified by the FDIC Manager or its designee).

(b) OIG Access to Books and Records. Independence One and MNC shall cause to be made available to the FDIC's OIG, at such reasonable times and places as the FDIC's OIG may specify, all books, papers, records, and information described in Section 8.4(a).

(c) OIG Audits and Examinations. The FDIC's OIG may audit or examine Independence One, MNC or any of their respective affiliates or subsidiaries with respect to transactions affecting the implementation of the Assistance Agreement, this Agreement, or both such Agreements at any reasonable time or times chosen by the FDIC's OIG. Such audits shall be conducted by the FDIC's OIG





MNB100_00320
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0320

at its own expense but, if requested by the FDIC's OIG, with the assistance of Independence One's or MNC's respective directors, officers, and employees, whose salaries and expenses shall be paid by Independence One or MNC without reimbursement from the FDIC.

(d) Other Rights. Notwithstanding anything to the contrary in this Agreement, the FDIC's OIG is statutorily obligated and empowered to audit any matters that relate to or arise out of the provisions of this Agreement and the Assistance Agreement. Nothing in this Agreement shall be construed to prevent or impair the audit and investigative authority of the FDIC's OIG pursuant to the Inspector General Act of 1977, as amended.

Section 8.5 Tax Matters.

(a) Independence One and MNC agree that they shall not in any way preclude, estop or challenge the FDIC from raising any matters pertaining to Independence One's or MNC's tax computations in accordance with Sections 2.4(k) and 4.1 herein on any tax returns that were filed for the periods ended December 31, 1991, December 31, 1992, and December 31, 1993.

~~Section 8.5 Tax Matters.~~ (b) Neither MNC nor any of its subsidiaries shall take a position on any of its Tax Returns that is inconsistent with the provisions of Section 13224 of the Revenue Reconciliation Act of 1993, nor shall any such entity make any claim or file any cause of action against the United States of America or any agency or instrumentality thereof, including, but not limited to, the IRS, the FDIC and the OTS,

relating in any way to such Section; provided, however, that if a court or other competent tribunal having jurisdiction over a similarly situated taxpayer determines in a final decision that such Section does not bar such similarly situated taxpayer from reflecting the losses referred to in such Section on its federal or state tax return, or that such similarly situated taxpayer is entitled to damages as a result of the enactment of such Section, MNC or any of its subsidiaries may take such action as is necessary to obtain the identical result and shall, within thirty (30) days after it receives any cash payments, or files a tax return upon which it realizes any tax benefit as a result of such action, pay fifty percent (50%) of the amount of such cash, including interest earned thereon, or tax benefit, including interest earned thereon, to the FDIC Manager.

**ARTICLE IX**
**RELEASE**

Section 9.1 Release by the FDIC Manager. The FDIC Manager ~~of the FRF (the "FDIC Releasor")~~ hereby releases, acquits, and forever discharges, effective as of the Closing, each of Independence One, MNC, and their subsidiaries, officers, directors, employees and affiliates (and the respective successors, assigns, employees, agents, and representatives of all the foregoing) (collectively, the "Independence One Released Persons") from and against any and all actions and causes of action, suits, disputes, debts, accounts, promises, warranties, damages, claims, proceedings, demands, and liabilities, of every



MNBA&P001_0323

MNB100_00322
Damages Phase
CONFIDENTIAL

kind and character, direct and indirect, known and unknown, in law or in equity, that ~~such~~ the FDIC ~~Releasor~~ Manager now has, has had at any time heretofore, or hereafter may have against the Independence One Released Persons by reason of any act or omission whatsoever by any Independence One Released Person in connection with the negotiation, administration, execution, or performance by any Independence One Released Person of the Assistance Agreement or any other agreements related thereto (and no other agreements to which the FDIC Manager is a party); provided, however, that the release provided in this Section 9.1 (i) is not intended to and shall not prevent any assertion of a claim with respect to any breach of this Agreement or any ancillary agreements or instruments executed and delivered by the parties or any of them in connection with the Closing or thereafter; (ii) shall not limit the right of the FDIC Manager to bring any claim based on fraud, willful misrepresentation of a material fact, willful failure to disclose a material fact, or willful misconduct; and (iii) shall not limit the rights of the FDIC Manager under Article IV of this Agreement.

Section 9.2 Release by Independence One and MNC. The Independence One Released Persons hereby release, hold harmless, acquit, and forever discharge each of the FDIC Manager and the FRF and their officers, directors, and employees (and the respective successors, assigns, employees, agents, and representatives of all the foregoing) (collectively, the "FDIC Released Persons") from and against any and all actions and



MNBA&P001_0324

MNB100_00323
Damages Phase
CONFIDENTIAL

causes of action, suits, disputes, debts, accounts, promises, warranties, damages, claims, proceedings, demands, and liabilities, of every kind and character, direct and indirect, known and unknown, in law or in equity, that such Independence One Released Persons now have, have had at any time heretofore, or hereafter may have against the FDIC Released Persons by reason of any act or omission whatsoever by any FDIC Released Persons in connection with the negotiation, administration, execution, or performance by any of the FDIC Released Persons of the Assistance Agreement or any other agreements related thereto; provided, however, that the release provided in this Section 9.2 (i) is not intended to and shall not prevent any assertion of a claim with respect to any breach of this Agreement or any ancillary agreements or instruments executed and delivered by the parties or any of them in connection with the Closing or thereafter; (ii) shall not limit the rights of Independence One or MNC to bring any claim based on fraud, willful misrepresentation of a material fact, willful failure to disclose a material fact, or willful misconduct; and (iii) shall not limit the rights of Independence One or MNC under Article IV of this Agreement.

Section 9.3 Accord and Satisfaction. Except as otherwise specifically provided herein (including, without limitation, in Sections 9.1(ii) and (iii) and Sections 9.2(ii) and ~~(iii)),~~ (iii)), performance by each party of its respective obligations under this Agreement shall effect a complete accord and satisfaction of any and all obligations and liabilities of such party under the



MNBA&P001_0325

MNB100_00324
Damages Phase
CONFIDENTIAL

Assistance Agreement and, thenceforth, such party shall be fully discharged from any obligation or liability of any kind in connection therewith, including, without limitation, any and all actions, causes of action, suits, debts, sums of money, bonds, covenants, agreements, promises, damages, judgments, claims, and demands whatsoever, known or unknown, suspected or unsuspected, at law or in equity.

Section 9.4 Rights to Enforce. Notwithstanding the foregoing provisions of this Article IX, Independence One, MNC, and the FDIC Manager shall retain their respective rights to enforce this Agreement.

ARTICLE X
INDEMNIFICATIONS

Section 10.1 Indemnification by the FDIC Manager.

(a) The FDIC Manager shall indemnify and hold harmless Independence One and MNC (including by way of indemnification of their officers, directors, employees, and affiliated persons) (the "Independence One Indemnitees") for sixty-three percent (63%) of the amounts actually incurred and paid by the Independence One Indemnitees in connection with the defense, prosecution, satisfaction, settlement, or compromise, including the reasonable costs and expenses of litigation (including reasonable attorneys' and accountants' fees, travel expenses, judgments, court costs, and related litigation expenses, and such other actual and reasonable costs as may be actually incurred and paid by the Independence One Indemnitees in connection with the



MNBA&P001_0326

MNB100_00325
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0325

defense, prosecution, satisfaction, settlement, or compromise) provided, however, that if the FDIC Manager agrees that such amounts are not deductible by any Independence One Indemnitee on its federal income tax return, the FDIC Manager shall indemnify such Independence One Indemnitee for one hundred percent (100%) of such amounts (all of such amounts, costs, and expenses hereinafter referred to as the "Costs"), of (i) any claims relating to the Transferred Cases and Covered Cases for which the FDIC Manager would have been required to indemnify the Independence One Indemnitees under the Assistance Agreement had such agreement not been terminated; and (ii) any Unreserved for Claims as such claims are described in Section 7(a)(1) of the Assistance Agreement ~~provided~~ but only to the extent that ~~any~~ such Unreserved for Claims under this Section 10.1(a)(ii) ~~involve~~ arise from Environmental Losses (as such term is defined herein). For purposes of this Section 10.1(a), "Environmental Losses" shall mean any and all claims, damages, losses, expenses, costs, deficiencies, penalties, liens, interest, fines, assessments, charges, compensation, obligations and liabilities of any kind imposed or incurred by, or under or pursuant to Environmental Laws (as such term is defined herein), whether based on negligence, strict liability or otherwise, under any theory or process of recovery or relief, at law or in equity, including restoration, abatement, ~~investigative~~ investigation, testing, monitoring, personal injury, death and property damage costs, and reasonable attorneys' fees, court costs, and interest paid or



MNBA&P001_0327

MNB100_00326
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0326

accrued, related to the contamination of the property to which the Transferred Cases or the Covered Cases relate or off-site locations arising from operations or activities on the property to which the Transferred Cases or the Covered Cases relate and the remediation thereof. For purposes of this Section 10.1(a), "Environmental Laws" shall mean any and all federal, state, or local laws (including common law), rules, regulations, orders, ordinances, writs, judgments, injunctions, decrees, or determinations in effect during the period of this Agreement ~~relation~~ relating to the protection of the environment, the release of any hazardous substances into the environment, the generation, management, transportation, storage, treatment and disposal of hazardous substances, or the pollution of air, soil, groundwater or surface water (including, without limitation, the Clear Air Act, the Toxic Substance Control Act, the Clean Water Act, CERCLA, and the ~~Resource Conservation Act~~ RCRA, all as amended).

(b) Independence One shall provide the FDIC Manager with prompt notice of any claim which may give rise to an indemnification hereunder and (i) cooperate with the FDIC Manager in connection with the defense of such claims, (ii) notify and provide the FDIC Manager with any summons, complaint, or other notice of lawsuit and any other documents directly related to such claims which the Independence One Indemnitees receive in connection with such claims within fifteen (15) days of receipt of such documents, and (iii) provide appropriate documentation of

the expenses for which the Independence One Indemnitees request indemnification. The FDIC Manager may participate, at its own expense, in the defense of such claims. The FDIC Manager may assume the defense of such claims provided that the FDIC Manager indemnifies and holds harmless the Independence One Indemnitees for any losses, costs, or expenses incurred by Independence One Indemnitees with respect to such assumed defenses (including any reasonable costs and expenses of litigation as specified in the first sentence of ~~this~~ Section 10.1(a)) in connection with the FDIC Manager's defense, satisfaction, settlement, or compromise of such defense. The FDIC Manager shall have the right to monitor and direct the defense of any proceeding for which the FDIC Manager is obligated to indemnify such Independence One Indemnitees pursuant to the provisions of this Section 10.1, and the FDIC Manager shall have the right to direct such Independence One Indemnitees to appeal any determination of any trial court. The settlement or compromise of any claims against the Independence One Indemnitees for which the FDIC Manager is obligated to indemnify such Independence One Indemnitees pursuant to this Section 10.1 is subject to the prior written approval of the FDIC Manager.

(c) Notwithstanding the foregoing Section 10.1(a), the FDIC Manager shall not indemnify an Independence One Indemnitee for any Cost arising (i) out of any matter that represents a breach of the representations and warranties contained in Section 7.1 hereof, or (ii) from any action or failure to act on the part of





CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0328

any of the Independence One Indemnitees that is inconsistent with the management standard set forth in Section 16(a) of the Assistance Agreement.

(d) The indemnification by the FDIC Manager in Section 10.1(a) shall not be transferable, directly or indirectly, without the prior written ~~notification to~~ consent of the FDIC Manager.

(e) The indemnification by the FDIC Manager in Section 10.1(a) shall expire at 11:59 p.m. Eastern Standard Time on December 31, 1998; provided, however, that for Costs incurred after such date, the indemnification shall continue for such Costs that are related to claims that are in litigation on such date, up to and including the date on which all such Costs are incurred and paid as provided in Section 10.1(f) hereof, and such litigation is finally resolved.

~~(f) Notwithstanding anything to the contrary in this Agreement, the FDIC Manager shall indemnify the Independence One Indemnitees for sixty-three percent (63%) of any Costs incurred and/or paid by them; provided, however, that if the FDIC Manager agrees that such Cost is not deductible by any Independence One Indemnitee on its federal income tax return, the FDIC Manager shall indemnify such Independence One Indemnitee for one hundred percent (100%) of such Cost.~~

~~(g)~~ (f) The FDIC Manager shall pay the Independence One Indemnitees for any and all Costs for which such Independence One

Indemnitees request indemnification within thirty (30) days after the FDIC Manager has received all appropriate documentation of such Costs.

Section 10.2 Indemnification by Independence One and MNC. Independence One and MNC shall indemnify and hold harmless the FDIC Manager and the FRF (including by way of indemnification of their officers, directors, employees, and affiliated persons) (the "FDIC Indemnitees") for amounts actually incurred and paid by the FDIC Indemnitees in connection with the defense, prosecution, satisfaction, settlement, or compromise, including the reasonable costs and expenses of litigation (including reasonable attorneys' and accountants' fees, travel expenses, judgments, court costs, and related litigation expenses, and such other costs as may be incurred and paid by the FDIC Indemnitees in connection with the defense, prosecution, satisfaction, settlement, or compromise), of any claims relating to the Transferred Cases or the Covered Cases arising out of or based upon any liability, action, or failure to act of Independence One or MNC or any of their affiliates, officers, or directors that are asserted against any of the FDIC Indemnitees, to the extent that Independence One or MNC are not indemnified pursuant to Section 10.1(c). The FDIC Indemnitees shall provide Independence One with prompt notice of any claim which may give rise to an indemnification hereunder and (i) cooperate with Independence One in connection with the defense of such claims, (ii) notify and provide Independence One with any summons, complaint, or other

notice of lawsuit and any other documents directly related to such claims which the FDIC Indemnitees receive in connection with such claims, and (iii) provide appropriate documentation of the expenses for which the FDIC Indemnitees request indemnification. Independence One or MNC may participate, at its own expense, in the defense of such claims. Independence One or MNC may assume the defense of such claims provided that Independence One or MNC indemnifies and holds harmless the FDIC Indemnitees for any losses, costs, or expenses incurred by the FDIC Indemnitees with respect to such assumed defenses (including any reasonable costs and expenses of litigation as specified in the first sentence of this Section 10.2) in connection with Independence One's or MNC's defense, satisfaction, settlement, or compromise of such defense. Independence One or MNC shall have the right to monitor and direct the defense of any proceeding for which Independence One and MNC are obligated to indemnify such FDIC Indemnitees pursuant to the provisions of this Section 10.2, and Independence One or MNC shall have the right to direct such FDIC Indemnitees to appeal any determination of any trial court. The settlement or compromise of any claims against FDIC Indemnitees for which Independence One and MNC are obligated to indemnify such FDIC Indemnitees pursuant to this Section 10.2 is subject to the prior written approval of Independence One or MNC.

## ARTICLE XI
## MISCELLANEOUS

Section 11.1 Amendments. No amendment, modification, or waiver of any provision of this Agreement, nor any consent to any





CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0331

departure therefrom by any party, shall in any event be effective unless the same shall be embodied in a writing signed by all parties hereto, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**Section 11.2** __Notices__. Any notice, request, claim, demand, consent, approval, or other communication to any party hereto shall be deemed effective when received and shall be given in writing, and delivered in person against receipt therefor, or sent by certified mail, postage prepaid, to such party at its address set forth below (with copies as indicated below) or at such other address as such party shall hereafter furnish in writing to the other parties.

(a) If to Independence One:

Independence One Bank of California, FSB
27271 Las Ramblas
Mission Viejo, California 92691

Attn: President

(b) If to MNC:

Michigan National Corporation
30665 Northwestern Highway
Farmington Hills, Michigan 48108

Attn: President

(c) If to the FDIC Manager:

Federal Deposit Insurance Corporation
Division of Resolutions
Assisted Acquisitions (FRF)
550 17th Street, N.W.
Washington, D.C. 20429

Attn: ~~Associate~~ Assistant Director (FRF)

With a copy to:

Federal Deposit Insurance Corporation
Legal Division
550 17th St., N.W.
Washington, D.C. 20429

Attn: Assistant General Counsel
(Resolutions)

For tax-related correspondence to the FDIC Manager:

Attn: Chief, FRF Tax Unit

Section 11.3 Waiver. No failure or delay on the part of any party to this Agreement in exercising any right, privilege, power, or remedy under this Agreement, and no course of dealing among the parties hereto, shall operate as a waiver of such right, privilege, power, or remedy; nor shall any single or partial exercise of any right, privilege, power, or remedy under this Agreement preclude any other or further exercise of such right, privilege, power, or remedy. The rights, privileges, powers, and remedies available to the parties hereto are cumulative and not exclusive of any other rights, privileges, powers, or remedies provided by statute, at law, in equity, or otherwise. No notice to or demand on any party in any case shall entitle such party to any other or further notice or demand in any similar or other circumstances or constitute a waiver of the right of the party giving such notice or making such demand to take any other or further action in any circumstances without notice or demand.

Section 11.4 Governing Law. To the extent federal law does not control, this Agreement and the rights and obligations





MNB100_00333
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0333

hereunder shall be governed by and construed in accordance with the law of the State of Michigan. Any legal action or proceedings with respect to this Agreement shall be brought in the federal courts of the United States of America located in the District of Columbia and each party hereto submits to the exclusive jurisdiction of such courts and hereby waives any objections on the grounds of venue, forum non conveniens, or any similar grounds.

Section 11.5 **Severability**. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under all applicable laws. However, in the event that any provision of this Agreement shall be held to be prohibited or invalid under any applicable law, or declared unenforceable, then all of the remaining provisions of this Agreement shall, to the fullest extent possible, remain in full force and effect and shall be binding on the parties hereto; provided, however, that this Section 11.5 shall be of no force or effect if the exclusion of such provision or portion thereof shall render the remaining provisions of this Agreement incapable of observance or shall cause this Agreement as a whole to fail of its essential purpose.

Section 11.6 **Successors and Assigns**. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and, except as otherwise provided in this Agreement, their respective successors and assigns; provided, however, that this Agreement may not be assigned to any person or entity, nor may



MNBA&P001_0335

MNB100_00334
Damages Phase
CONFIDENTIAL

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER PMI088 0334

any rights or obligations under this Agreement be transferred or delegated to or vested in any other person or entity, without the prior written consent of the FDIC Manager. Accordingly, MNC and Independence One shall remain liable to the FDIC Manager for all obligations under this Agreement, including the obligation to make payments under Section 2.4 hereof, unless the FDIC Manager has provided its prior written consent to the release of such parties.

Section 11.7 Headings. The headings contained in this Agreement are for convenience only and shall not affect the construction of any provision of this Agreement.

Section 11.8 Exhibits. All Exhibits attached hereto are an integral part of and hereby incorporated into this Agreement.

Section 11.9 Entire Agreement. This Agreement and the Exhibits hereto embody the entire agreement among the parties hereto relating to the subject matters herein, and supersede all prior agreements and understandings among the parties, oral or written, relating to such matters.

Section 11.10 Third-Party Beneficiaries. Except as expressly provided in this Agreement, no provision of this Agreement is intended to benefit, nor shall it benefit, any person other than the parties hereto.

Section 11.11 Execution in Counterparts. This Agreement may be executed in separate counterparts, each of which when executed and delivered shall be deemed to be an original, and all

of which taken together shall constitute one and the same Agreement.

Section 11.12 Continuing Cooperation. The parties hereto agree that they shall exercise their reasonable judgment and act in good faith in performing their duties and responsibilities under this Agreement and they shall also in good faith, and with their best efforts, cooperate with one another to carry out the purposes of this Agreement.

Section 11.13 Joint and Several Liability of MNC and Independence One. Any obligation of Independence One or MNC to the FDIC Manager under this Agreement shall be the obligation of each of them and each shall be jointly and severally liable to perform such obligation.

Section 11.14 Nature of Payments. All payments provided for in this Agreement to be made by the FDIC Manager to Independence One or MNC represent either a prepayment, or a payment in lieu of, a fixed or contingent right to assistance provided for in the Assistance Agreement, and all payments provided for in ~~the Assistance~~ this Agreement to be made by Independence One or MNC to the FDIC Manager represent a payment of net tax benefits or a repayment of other assistance provided for in the Assistance Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers as of the day and year first above written.

INDEPENDENCE ONE BANK OF CALIFORNIA, FSB

By: ______________________
Name: ______________________
Title: ______________________

MICHIGAN NATIONAL CORPORATION

By: ______________________
Name: ______________________
Title: ______________________

FEDERAL DEPOSIT INSURANCE CORPORATION, AS MANAGER OF THE FSLIC RESOLUTION FUND

By: ______________________
Name: ______________________
Title: ______________________

------------------ COMPARISON OF FOOTNOTES ------------------

-FOOTNOTE 1-
This Exhibit will list the affirmative matters and any other litigation the FDIC wants to manage.

-FOOTNOTE 2-
This Exhibit will include the defensive litigation and any other matters the FDIC doesn't want to manage.

~~-FOOTNOTE 3-~~
~~DOR: Should this read "Within one (1) business day. . . "?~~

~~-FOOTNOTE 4-~~
~~DOR: Is this language applicable?~~

~~-FOOTNOTE 5-~~
~~DOR: Do you want the entity's CPA to certify this or perhaps its CFO or is there someone you have in mind?~~

~~-FOOTNOTE 6-~~
~~DOR: Is this the correct date?~~

~~-FOOTNOTE 7-~~
~~DOR: Is this the correct date?~~

------------------ COMPARISON OF FOOTERS ------------------

-FOOTER 1-
- # -